DANIEL BOGDEN
United States Attorney
MICHAEL CHU
Assistant United States Attorney
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada  89101
(702) 388-6336

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

United States of America,
    Plaintiff,

v.

Linda Livolsi,
    Defendant.

Case No. 2:10-cr-578-PMP-RJJ

**Response to Defendant's
Motion to Transfer Venue**

    The United States, by and through the undersigned attorneys, asks the Court to deny defendant's motion to transfer venue because defendant (a) defrauded victims in Nevada, (b) availed herself of the benefits of Nevada's services in furthering her fraud, and (c) cloaked her fraudulent actions by claiming that RGM Enterprises, LLC was based in Nevada,

### Points and Authorities

    Defendant is charged with conspiracy to commit wire fraud and wire fraud for, essentially, operating a Ponzi scheme by convincing her victims to invest in her non-existent hedge fund.  A conspiracy is a continuing offense that may be prosecuted "in any district" where it was "begun, continued, or completed."  18 U.S.C. § 3237(a).  Venue is proper for a conspiracy wherever an overt act was committed in the course of the conspiracy.  *United States v. Angotti*, 105 F.3d 539, 545 (9th Cir. 1997).  Similarly, venue is proper for wire fraud where the transmission is orchestrated.  *United States v. Baiocchi*, 2007 WL 2183429, at *2 (9th Cir. 2007).

1

As defendant notes, courts are to consider factors set forth in *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964). That said, "while the venue requirement protects the accused from 'the unfairness and hardship' of prosecution 'in a remote place,' 'the constitutional text makes plain [that] unfairness is generally not a concern when a defendant is tried in a district 'wherein the crime shall have been committed.'" *United States v. Gonzalez*, 683 F.3d 1221, 1227 (9th Cir. 2012) (citations omitted, brackets in original). Considering these factors shows that defendant should be tried in Las Vegas, Nevada.

**A. Many of defendant's victims are located in Las Vegas**

Victims John Macchia, Sandra Perry and Geraldine Grodzinsky lived in Nevada when they were defrauded. They live here still. Transferring this case to Oklahoma would not redound to the convenience of these victims.

In fact, defendant herself lived in Nevada while she committed much of her fraud. Starting no later than July 2003, Nevada DMV records show that she had a Nevada driver's license and resided in Las Vegas. (Bates No. 11487 to 11488). In November 2006, victim John Macchia sued to get his money back. *See* Clark County Court Docket Sheet for *Macchia v. Grogg,* Case No. 06A531005 <https://www.clarkcountycourts.us/Anonymous/CaseDetail.aspx?CaseID=6640311> (accessed August 13, 2012). On June 21, 2007, Mr. Macchia obtained a judgment of $2,569,244.00 against defendant. *Id.* On July 17, 2007, defendant moved to Oklahoma and obtained a driver's license there. (Bates No. 11496).

**B. Defendant perpetrated her fraud largely from Nevada, and invoked Nevada's institutions in furthering her scheme**

Although defendant currently lives in Oklahoma, she perpetrated her fraud largely from Las Vegas, Nevada. As this non-exhaustive list of facts show, defendant has invoked nearly insurmountable ties to Las Vegas, Nevada by (a) defrauding victims in Nevada, (b) availing herself

2

of Nevada's services in furthering her scheme, and (c) cloaking her fraudulent actions by claiming that RGM Enterprises, LLC was based in Nevada:

- Defendant used the State of Nevada to further her scheme.  When defendant formed RGM Enterprises, LLC, the shell entity that supposedly acted as "Investment Advisor" to the billion dollar hedge fund, she chose to create this entity as a Nevada Limited Liability Company.  (Bates No. 1550 to 1558).  Having availed herself of the services of Nevada to further her scheme, defendant should not be allowed to transfer venue away from Nevada.

- In all of the private placement memoranda that defendant gave to her victims, she listed the contact address as RGM Enterprises, LLC, as 848 N. Rainbow Blvd., Suite 229, Las Vegas, Nevada 89107.  *See, e.g.,* Bates Nos. 321 to 335.

- In the lulling letters and account statements that defendant sent to her victims to lull them into a sense of complacency, she listed RGM Enterprises, LLC's office address as 848 N. Rainbow Blvd., Suite 229, Las Vegas, Nevada 89107; she also listed contact numbers with area code 702.  *See, e.g.,* Bates Nos. 309 to 314, 389 to  (account statements); 348 to 376 (lulling letters).  Although she misrepresented this address to be its offices, it was, in reality, a post office box.

- Money was wired to "RGM Enterprises, 848 N. Rainbow Blvd., Las Vegas, NV."  *See, e.g.,* Bates No. 402 (wire transfer request).

- The bank accounts that received victims' payments listed RGM Enterprises' Nevada address.  For example, the Wachovia Bank account in which defendant received victim Ellwood Bartlett's $5,015,000 payment was opened by defendant in the name of "RGM Enterprises, LLC, 848 North Rainbow Blvd. Ste 229, Las Vegas, NV 89107" (Bates No. 3444).  Statements for this bank account from when it was opened in November 2007, to when it was closed in January 2009, were sent to that address in Nevada.

- Receipts of payment purported to be sent from Nevada.  *See, e.g.,* Bates No. 416 (Receipt from "RGM Enterprises, 848 N Rainbow Blvd, Suite 229, Las Vegas, NV 89107, 702-395-7330" of $100,000 payment from John Macchia).

**C. While in Nevada, defendant caused victim Ellwood Bartlett to wire $5,015,000**

When defendant fraudulently convinced victim Ellwood Bartlett to invest $5,015,000 in her billion dollar hedge fund, defendant did so while in Nevada.  To convince Bartlett to in her hedge fund, defendant invited Bartlett and his wife to meet in Las Vegas, Nevada.  They met at a restaurant in Las Vegas, where defendant and two of her co-conspirators told Bartlett and his wife about how successful their hedge fund was, and how there was an opening to invest for only a limited time.

3

After dinner, Bartlett and his wife signed the investment documents in Las Vegas.  On December 3, 2007, while still in Las Vegas, they directed their bank to issue $5,015,000 to RGM Enterprises, LLC by faxing in a request from the Venetian Resort and Casino in Las Vegas, Nevada.

Defendant's motion, p. 2, mistakenly claims that Bartlett initiated his December 3, 2007 wire transfer from Marina Del Rey, California, "where Mrs. Livolsi and Mr. Bartlett were visiting in order to attend the Grammy Awards."  This is incorrect because the Grammy Awards were on Sunday, February 10, 2008.  Bates No. 11455 to 56 (1/14/08 E-mail from rgmenterprises@sbcglobal.net to the Bartletts, where defendant notes that the "Grammy's are on Sunday, Feb 10th"); *see also* February 8, 2008 Grammy press release <http://www.grammy.org/recording-academy/news/leading-nominees-added-to-grammy-lineup> (reviewed July 25, 2012) (noting that the 50th Annual Grammy Awards "will take place live on Sunday, Feb. 10").

Thus, the Grammy Awards occurred two months after Mr. Bartlett initiated his December 3, 2007 wire transfer.  In fact, unbeknownst to Mr. Bartlett, defendant used part of his December 3, 2007 $5,015,000 investment to buy him these "complimentary" tickets.  Bates No. 4076 (2/4/08 wire transfer of $25,000 from RGM Enterprises, LLC's Wachovia Bank account #3450 to Millionaires Concierge, LLC to purchase "GRAMMY TICKETS").

**D. The 9th Circuit has held that the location of <u>both</u> parties must be considered**

"While Rule 21(b) contemplates minimization of inconvenience to the defense, it has been recognized that some degree of inconvenience is inevitable, and that the government's inconvenience must be considered as well."  *United States v. Testa*, 548 F.2d 847, 857 (9th Cir. 1997) (denying defendant's motion).  In this case, the FBI agents, the FBI analyst, and counsel for the United States all reside in Las Vegas, Nevada.

It is unclear that defendant will be greatly inconvenienced.  From December 9, 2010 when defendant was arrested until July 26, 2012 – a span of over 19 months that included <u>five</u> continuances – defendant never once sought to transfer her trial away from Nevada.  She apparently was ready to stand trial in Nevada until her attorneys mentioned a motion to transfer venue in July 2012.  This alone speaks volumes about her request.

**E.  Location of defendant's attorneys are in Las Vegas**

Although attorney Scott Graham has now entered an appearance in this case, he did not enter an appearance in this case until July 12, 2012.  This is not a strong tie to Oklahoma.

Instead, for the first 19 months, defendant was represented by two Las Vegas lawyers: Matthew Dushoff and Patrick McDonald.  These lawyers were not appointed, but rather retained.  Moreover, her first attorney, Matthew Dushoff, Esq., helped defend her in a civil case based on the same facts.  Thus, putting aside her purported medical conditions, facing trial in Oklahoma will only give defendant another ground for delaying her trial.

**F.  It appears that no documents and records exist in Oklahoma**

Although defendant claims that RGM Enterprises, LLC's records are in Oklahoma, there is strong reason to believe that these records do not exist.  For example, no records have been produced despite the Court's Order to Compel Production of these documents (Dkt #31).  Notably, that Order was filed July 12, <u>2011</u>, over a year ago.

If any such documents existed, they would help exculpate defendant by documenting that her billion dollar hedge fund was real. Defendant thus has every incentive to ensure these documents are produced – if they exist. To date, however, no documents have been received, despite repeated invitations to her (and later, her attorney) to do so.  The inference is clear:  there are no records that

would substantiate this supposed billion dollar hedge fund.[1]  Thus, this factor does not weigh in favor of defendant.

### G. Defendant's purported leukemia, thyroid cancer, lupus, lung cancer and anemia

At the July 26, 2012 hearing, the doctor from whom defendant obtained a note excusing her from trial – presumably, selected by defendant because he was the doctor best positioned to know about her conditions – stated that he did not diagnose defendant with leukemia, lupus, or thyroid cancer.  In fact, he stated that he had no basis for concluding she had these conditions other than defendant's own statements.  He also noted that although he is an oncologist, he has been coordinating her care because defendant "seems to have trouble keeping primary physicians."[2]  The United States respectfully submits that this is enough to cast doubt on defendant's purported health conditions, and combined with the factors set forth above, is sufficient to deny defendant's motion.

That said, if the Court is considering transfer of this case because of defendant's purported health issues, the United States asks the Court to appoint an independent medical examiner.  As the Court noted at the July 26, 2012 hearing, this appears to be the best way to resolve the question that defendant has now put squarely in issue:  her health.

The United States has obtained the name of a reputable oncologist in Tulsa, Oklahoma:  Dr. Joseph P. Lynch of Oklahoma Oncology, and proposes as follows.

1. Defendant be ordered to see Dr. Joseph P. Lynch for an initial evaluation within two weeks of the Court's Order.

2. Defendant be ordered to submit to any tests that Dr. Lynch deems necessary.

---

[1] The United States suspects defendant will show up at trial with un-produced documents, and attempt to enter them into evidence.  As the United States noted in its Motion to Compel (Dkt #22), it sought timely disclosure of these documents to ensure "that defendant does not suddenly show up at trial with responsive documents, thereby preventing the United States from verifying the veracity of any such documents."

[2] In fact, although defendant claims that she "currently suffers from the effects of chemotherapy to treat leukemia," Mtn, p, 10, ln 2, she has often claimed that she is in remission, and thus would not be receiving chemotherapy.

3. The United States will provide any health records that defendant's counsel obtained from her health providers. These include the records filed as Dkt # 43, 44, 47.

4. The Court should order that defendant provide releases for any medical records that Dr. Lynch deems necessary.

5. Dr. Lynch provide a written report that summarizes his findings.

**<u>Conclusion</u>**

For all of these reasons, the United States asks that defendant's motion be denied. In the alternative, the United States asks that the Court direct defendant to comply with the examination of an independent medical examiner.

Dated: August 13, 2012.

                                            Respectfully submitted,

                                            DANIEL BOGDEN
                                            United States Attorney

                                            /s/
                                       _____
                                       Michael Chu
                                       Assistant U.S. Attorney