UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiffs, | ) | Case No. 2:10-cr-00578-PMP-GWF |
| vs. | ) | **ORDER CERTIFYING FACTS PURSUANT TO 28 U.S.C. § 636(e)(B)** |
| LINDA LIVOLSI, et al. | ) | |
| Defendants. | ) | **Motion for Order to Show Cause - #35** |

This matter is before the Court on the Government's Motion for Order to Show Cause (#35), which was renewed by the Government's Motion for Order to Show Cause (#98), filed on October 23, 2013. The Court conducted a hearing in this matter on March 28, 2014.

## BACKGROUND

Defendant Linda Livolsi was originally indicted in this case on December 1, 2010 for conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and wire fraud in violation of 18 U.S.C. § 1343. *Indictment (#1)*. Count One of the indictment alleged that Ms. Livolsi falsely and fraudulently induced people to invest with her by representing that she was an investment adviser to a hedge fund that would invest in publicly traded companies, and that her hedge fund had a track record of outstanding returns. ¶ 4. The indictment alleged that instead of investing the investors' money in a hedge fund, Ms. Livolsi and her co-conspirators used the money to pay for personal purchases and expenses. ¶ 7. Count Two of the indictment alleged that Linda Livolsi committed wire fraud by obtaining $5,015,000.00 from an individual identified as "E. B." by means of materially false and fraudulent pretenses, representations and promises. ¶¶ 11, 12. On January 7, 2014, the Government filed a superceding indictment which added six additional counts against

Linda Livolsi for filing false and fraudulent tax returns and failure to file tax return, and which also joined her husband, William Livolsi, Jr., as a co-defendant on Counts One and Two.

On November 9, 2010, FBI agents served a grand jury subpoena directed to RGM Enterprises, LLC ("RGM") on Linda Livolsi as the general manager/managing member of RGM. *See Government's Hearing Exhibit 1*. The subpoena called for the production of documents relating to (1) the formation of RGM Enterprises, LLC-articles of incorporation, by-laws and minutes; (2) a list of all investment classes and their description that RGM offers; (3) a list of all RGM Enterprises hedge funds and other investment vehicles; (4) copies of business licenses held by RGM Enterprises, or a list of the business licenses and the jurisdictions in which they were obtained; (5) a list of past and present directors, officers and employees and their contact information; (6) a list of past and present addresses for RGM Enterprises; and (7) past and present office lease agreements. *Government's Hearing Exhibit 1.*

The subpoena also requested (1) a list of past and current customers and investors and their contact information; (2) correspondence with past and current customers and investors; (3) copies of promotional materials sent to customers and investors; (4) statements of customers and investors; and (5) hedge fund publications in which Linda Grogg, Linda Livolsi and/or RGM Enterprises, LLC had been featured, as well as investment agreements sent to customers and investors, and private placement memoranda sent to customers and investors. *Id.*

Prior to serving the subpoena, the FBI agents also interviewed Linda Livolsi on November 9, 2010. *See Government's Hearing Exhibit 2*, FBI "302" report of interview, *Bates pg. 1-10;* and hearing testimony of FBI Agent Jerald Burkin. During this interview, Ms. Livolsi allegedly described the history of RGM Enterprises, LLC and its associated hedge fund, RGM Aggressive Growth Fund (RGMA), its business and investment practices, its employees, its various business records, as well as the various banks through which RGM Enterprises, LLC conducted business. Ms. Livolsi allegedly told the agents that RGM Enterprises, LLC maintained records regarding its client-investors' accounts, that RGM was audited annually, and that Ms. Lovolsi and the other officer of the company, Joshua Nichols, received annual salaries of approximately $250,000. Ms. Livolsi indicated that books and records of RGM Enterprise and RGMA were "currently in storage

in Las Vegas, NV." Ms. Livolsi stated that she would provide copies of these records to the interviewing agents. *Id., pg. 2.*

The FBI agents also allegedly confronted Ms. Livolsi with information that two investors, Mr. and Mrs. Bartlett, deposited $5,015,000 into RGM's bank account by wire transfer in December 2007, and that shortly thereafter $3,500,000 was transferred from RGM's bank account into the bank account of the William Livolsi Living Trust. The agent further stated that several cashiers checks were issued from William Livolsi Living Trust bank account to individuals who had sued or were suing Ms. Livolsi or RGM for the return of their investments. Linda Livolsi allegedly told the agents that notwithstanding the $3,500,000 withdrawal from the RGM account, RGM had assets in other bank accounts to cover the amounts deposited by the Bartletts. According to the report, "Livolsi was advised that if these bank accounts did exist that she should provide information about them to the interviewing agents as a means to corroborate her explanation." *Government's Hearing Exhibit 2, pg. 10.* Ms. Livolsi allegedly advised the agents that the additional bank accounts existed and that she would contact her attorney to solicit advice on releasing the information to the interviewing agents. At that point the interview was terminated and the agents served Ms. Livolsi with the grand jury subpoena. *Id.*

On May 27, 2011, the Government filed a Sealed Motion to Compel Subpoena Response (#22), in which it sought an order requiring the subpoenaed party, RGM Enterprises, LLC to respond to the grand jury subpoena. The Government represented that following the service of the subpoena neither Linda Livolsi nor RGM provided documents in compliance with the subpoena. The motion further stated:

> Subsequently, on December 1, 2010, Ms. Livolsi was indicted for engaging in a fraud scheme. Essentially, the indictment alleges that from 2006 to 2010, defendant defrauded victims into believing that she invested their money in a "hedge fund," RGM Aggressive Growth Fund. (The investment manager of this "hedge fund" was RGM Enterprises, LLC, the party subject to the subpoena.) Based on the evidence, the United States believes there was, in fact, no such "hedge fund," that in reality, defendant Livolsi operated a small restaurant in Cleveland, Oklahoma, and that ultimately, defendant used victims' money for her own personal benefit.

*Motion (#22), pg. 3.*

3

The Government further stated that although Ms. Livolsi's former counsel had represented on at least two separate occasions that Ms. Livolsi was gathering the records together to produce them to the Government, no responsive records were provided. Ultimately, Ms. Livolsi, through counsel, declined to produce the records asserting the "act of production privilege." *Id.*

The Government stated that it was "deeply skeptical that RGM has any such responsive documents. If any such documents existed, they would help exculpate defendant by rebutting that her 'hedge fund' was real." The Government stated that it sought to "compel compliance with this subpoena to ensure that defendant does not suddenly show up at trial with responsive documents, thereby preventing the United States from verifying the veracity of any such documents. In short, the United States seeks to prevent the defendant from asserting act of production privilege as both sword and shield." *Id., pg. 4.* On July 11, 2011, the Court entered an order granting the Government's motion to compel. *Order (#31).* In so ordering, the court rejected Defendant Livolsi's assertion that she could resist complying with the subpoena to RGM Enterprises, LLC based on the Fifth Amendment privilege against self-incrimination.

Neither RGM Enterprises, LLC nor Defendant Livolsi produced records in compliance with the subpoena or the Court's order. According to another FBI 302 report, Ms. Livolsi was present in court on January 27, 2012 for a status hearing before the magistrate judge.[1] Prior to the hearing, Ms. Livolsi allegedly stated in the presence of her former counsel, Ms. Livolsi's sister and the Assistant United States Attorney that she was no longer a part of RGM Enterprises, LLC which had been closed since February, 2011. *Government's Hearing Exhibit 3, pg. 13.* The report further stated:

> When asked for documents pursuant to a grand jury subpoena that she was served, LIVOLSI stated she has been in and out of the hospital a lot lately and couldn't keep her days straight. LIVOLSI couldn't remember the specifics of the grand jury subpoena and questioned [her counsel] whether or not she received it. LIVOLSI asked what type of documents were requested in the grand jury subpoena at which time AUSA CHU gave examples of what type of

---

[1] The case docket confirms that a status hearing occurred on January 27, 2012 at which Ms. Livolsi was present. *See Minutes of Proceedings (#50).*

>  documents were being requested.  LIVOLSI stated there are a "ton" of documents and that JOSHUA NICHOLS would need to get the requested documents.

*Id.*

During the hearing on March 28, 2014, FBI Agent Jerald Burkin testified regarding his interview with Ms. Livolsi on November 9, 2010 and the service of the subpoena on that date. Agent Burkin testified that the subpoena was served on Ms. Livolsi because she was the president and custodian of records of RGM Enterprises.  Agent Burkin also testified about other documents contained in *Government's Exhibit 3* which were introduced during the hearing.  The first page of *Exhibit 3* was a promotional document regarding RGM Enterprises which contained a photograph of Linda G. Grogg, i.e. Defendant Livolsi, and identified here as the president, founder and general partner of RGM Enterprises, LLC.  The document contained a brief biography of Ms. Grogg's professional background and expertise, including that she had a degree in finance from the University of Oklahoma.  Agent Burkin testified that a grand jury subpoena was served on the University of Oklahoma for Defendant Livolsi's education records.  The University of Oklahoma responded that it had no record of Defendant Livolsi attending or receiving a degree from the university under her true name or any of her known aliases.

The promotional document also contained a photograph of a male individual identified as "Joshua Nichols, CFA, Associate Director and Chief Operating Officer." *Exhibit 3, pg. 1*.  The document also contained a brief biography of Mr. Nichols and stated that he received a degree in Finance from UCLA in May 1988.  Agent Burkin testified that page two of *Exhibit 3* also contains biographical information about Ms. Livolsi and Joshua Nichols that was included in an investment contract provided to the FBI by one of the investors.  According to this document, Joshua Nichols received a degree in finance from Cornell University in May 1988.  Agent Burkin testified that grand jury subpoenas were served on both UCLA and Cornell to obtain school records regarding Joshua Nichols.  Both universities responded to the subpoenas by stating that they had no records of Joshua Nichols ever attending either institution.  Agent Burkin testified that during the November 9, 2010 interview, Defendant Livolsi told the agents that Joshua Nichols was one of the first employees, if not the first employee, of RGM Enterprises, LLC and played a crucial role in the

company from its beginning up through 2010.  Agent Burkin testified that he has attempted to locate Joshua Nichols since 2010, but to date has not been able to locate such an individual.  He stated that the FBI has been unable to locate any personal identifier information for Joshua Nichols such as date of birth or social security number.  He also testified that a review of RGM's bank records obtained by the FBI from the banks contain no records of any payments to Joshua Nichols.

Agent Burkin also testified that the FBI obtained RGM Enterprises account statements from complaining investors which purported to show a summary of the investors' accounts and their current balances.  The FBI also obtained from investors' redemption statements, account subscription receipts and other documents that were sent to the investors by RGM or Ms. Livolsi. *See Exhibit 3, pgs. 3-12.*  The exhibit also contains a copy of the print screen from the RGM Enterprises, LLC website for April 19, 2006.  *Id., pg. 4.*  Agent Burkin testified that in December 2013, he spoke to the registered agent for RGM Enterprises, LLC who informed him that in December 2010 his company had received a request from Ms. Livolsi for corporate documents that were filed with the state on behalf of RGM.  The registered agent told the FBI that he provided the requested articles of organization for RGM Enterprises, LLC to Ms. Livolsi.  Agent Burkin testified that Ms. Livolsi, however, did not provide such documents to the Government as required by the subpoena.

## **DISCUSSION**

Other than the sanction of contempt, the Federal Rules of Criminal Procedure do not contain any specific sanctions for a party's failure or refusal to comply with a grand jury subpoena. *See* Fed.R.Crim.P. 6(e)(7).  Pursuant to 28 U.S.C. § 636(e)(6)(B), the magistrate does not have authority in this circumstance to impose sanctions for contempt on the Defendant.  The magistrate judge, however, is directed to "certify the facts to the district judge and may serve or caused to be served upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a date certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." *Id.*

In this case, Magistrate Judge Johnston granted the Government's motion to compel compliance with the subpoena.  In seeking that order, the Government stated that it sought to

compel compliance to ensure that the Defendant does not suddenly show up at trial with responsive documents, thereby preventing the United States from verifying the veracity of any such documents. "In short, the United States seeks to prevent the defendant from asserting act of production privilege as both sword and shield." As discussed above, RGM, Enterprises, LLC or Defendant Livolsi, as its former president and alleged custodian of records, did not comply with the subpoena or with the magistrate judge's order. Whether and to what extent RGM Enterprises, LLC or Defendant Livolsi ever had the various records sought by the Government in the grand jury subpoena is questionable. Prior to February 2011, RGM and/or Defendant Livolsi had some documents requested in the subpoena, as demonstrated by the documents that the Government obtained from investors and the information it obtained from RGM's registered agent. Ms. Livolsi has subsequently claimed, however, that she did not possess any of RGM's records that were allegedly stored somewhere in Las Vegas under the control of Joshua Nichols. As Agent Burkin's testimony indicates, it is questionable whether Joshua Nichols is an actual person.

It is appropriate that Defendant should be precluded from introducing documents at her criminal trial that were subpoenaed by the Government, and which Defendant was ordered to produce, but has never done so. Whether other contempt sanctions should be imposed on Defendant, this Court leaves to the judgment of the District Judge. Accordingly,

**IT IS HEREBY ORDERED** that the foregoing facts are certified to the District Judge.

**IT IS FURTHER ORDERED** that Defendant Linda Livolsi should appear before the District Court on **October 15, 2014 at 10:00 AM**, in Courtroom 4B, to show cause why she should not be adjudged in contempt by reason of the facts so certified.

DATED this 24th day of September, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge