```
                                    ___ FILED        ___ RECEIVED
                                    ___ ENTERED      ___ SERVED ON
                                              COUNSEL/PARTIES OF RECORD

                                          OCT 1 5 2014

                                         CLERK US DISTRICT COURT
                                           DISTRICT OF NEVADA
                                    BY: _____ DEPUTY
```

DANIEL G. BOGDEN
United States Attorney
District of Nevada
J. Gregory Damm
Assistant United States Attorney
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
702-388-6336

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) 2:10-CR-578-PMP-GWF |
| vs. | ) **PLEA AGREEMENT UNDER** |
| | ) **FED. R. CRIM. P. 11 (c)(1)(A) and (B)** |
| LINDA LIVOLSI, aka LINDA G. FINDLEY, | ) |
| aka LINDA GROGG, | ) |
| Defendant. | ) |

Plaintiff United States of America, by and through DANIEL G. BOGDEN, United States Attorney, and J. Gregory Damm, Assistant United States Attorney, the defendant LINDA LIVOLSI, aka LINDA G. FINDLEY, aka LINDA GROGG, and the defendant's attorney, Monique Kirtley-Travis, Assistant Federal Public Defender, submit this Plea Agreement under Fed. R. Crim. P. 11(c)(1)(A and B).

I. **SCOPE OF AGREEMENT**

The parties to this Plea Agreement are the United States of America and LINDA LIVOLSI, aka LINDA G. FINDLEY, aka LINDA GROGG (the defendant). This Plea Agreement binds the defendant and the United States Attorney's Office for the District of

Nevada. It does not bind any other prosecuting, administrative, or regulatory authority, the United States Probation Office, or the Court.

The Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the Plea Agreement and applicable sentences, fines, restitution and forfeiture. It does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the defendant.

## II.   DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

A.   <u>Guilty Plea</u>. The defendant knowingly and voluntarily agrees to plead guilty to the following charges as set forth in the superseding indictment (CR # 110) returned by the grand jury on January 7, 2014:

<u>Count 2</u>: Wire Fraud in violation of 18 U.S.C. § 1343, and

<u>Count 4</u>: False and Fraudulent Tax Returns in violation of 26 U.S.C. § 7206(1).

The defendant also agrees to the forfeiture of the property set forth in the Forfeiture Allegations of the Indictment.

B.   <u>Waiver of Trial Rights</u>. The defendant acknowledges that she has been advised and understands that by entering a plea of guilty she is waiving -- that is, giving up -- certain rights guaranteed to all defendants by the laws and the Constitution of the United States. Specifically, the defendant is giving up:

1.   The right to proceed to trial by jury on all charges, or to a trial by a judge if the defendant and the United States both agree;

2.   The right to confront the witnesses against the defendant at such a trial, and to cross-examine them;

3.   The right to remain silent at such a trial, with assurance that her silence could not be used against her in any way;

2

4. The right to testify in her own defense at such a trial if she so chooses;

5. The right to compel witnesses to appear at such a trial and testify in the defendant's behalf; and

6. The right to have the assistance of an attorney at all stages of such proceedings.

C. <u>Withdrawal of Guilty Plea</u>. The defendant will not seek to withdraw her guilty pleas after she has entered them in court.

D. <u>Additional Charges</u>. The United States agrees not to bring any additional charges against the defendant arising out of the investigation in the District of Nevada which culminated in this Plea Agreement and based on conduct known to the United States except that the United States reserves the right to prosecute the defendant for any crime of violence as defined by 18 U.S.C. § 16.

The United States will move to dismiss any additional charges pending against the defendant in this case at the time of sentencing.

**III.   ELEMENTS OF THE OFFENSES**

<u>Count 2</u>: The elements of Wire Fraud under 18 U.S.C. § 1343 are:

1. The defendant knowingly participated in, devised and intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2. The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. The defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

3

4.    The defendant used, or caused to be used, the wires to carry out or attempt to carry out an essential part of the scheme.

*See* Ninth Cir. Manual of Model Jury Instr., Criminal 8.121 & 8.124 (2010 ed.).

<u>Count 4</u>: The elements of False and Fraudulent Tax Returns under 26 U.S.C. § 7206(1) are:

1.    The defendant made and signed a tax return for the year 2004 that she knew contained false and incorrect information as to a material matter;

2.    The return contained a written declaration that it was being signed subject to the penalties of perjury; and

3.    In filing the false tax return, the defendant acted willfully.

*See* Ninth Cir. Manual of Model Jury Instr., Criminal 9.39 (2010 ed.).

### IV.  FACTS SUPPORTING GUILTY PLEA

A.    The defendant will plead guilty because she is, in fact and under the law, guilty of the crimes charged.

B.    The defendant acknowledges that if she elected to go to trial instead of pleading guilty, the United States could prove her guilt beyond a reasonable doubt and establish its right to a forfeiture money judgment. The defendant further acknowledges that her admissions and declarations of fact set forth below satisfy every element of the charged offenses.

C.    The defendant waives any potential future claim that the facts she admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offenses.

D.    The defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

LINDA LIVOLSI solicited E.B. and led him to believe that he would be investing in a hedge fund that she managed. In reality, LINDA LIVOLSI never operated a hedge fund and

instead took the money and used it for other means. LINDA LIVOLSI had been defrauding other unsuspecting investors since at least 2003, ending with the theft of $5,015,000 from E. B. in late 2007, under the artifice of RGM Enterprises, LLC, (a Nevada corporation) not registered in the State of Nevada until 2006.

LINDA LIVOLSI operated RGM Enterprises as a Ponzi scheme in which she induced others into believing that they were investing in a hedge fund purportedly offering large returns on their investments. In reality, LINDA LIVOLSI never invested the funds. LINDA LIVOLSI was able to fool others by providing false hedge fund financial statements as well as providing the individual investors with false account statements.

LINDA LIVOLSI also evaded the assessment of her 2004 federal income taxes when she provided false information to the preparer of that tax return. LINDA LIVOLSI never told the preparer about income she was receiving from individuals who she led to believe were investing in a hedge fund. LINDA LIVOLSI later signed and filed her 2004 false tax return in January 2008.

WILLIAM LIVOLSI and LINDA LIVOLSI opened bank accounts in 2007 to layer transfers from proceeds received from E.B. E.B. was fraudulently induced by LINDA LIVOLSI to wire transfer $5,015,000 from the state of Maryland to an RGM Enterprises, LLC, Wachovia bank account located in Las Vegas, Nevada. WILLIAM LIVOLSI and LINDA LIVOLSI used the E.B. proceeds to pay off prior victims, and then LINDA LIVOLSI signed and filed false tax returns in January 2008. LINDA LIVOLSI and WILLIAM LIVOLSI used the remaining E.B. proceeds for their own personal benefit during 2007 and 2008. LINDA LIVOLSI created RGM Enterprises in 1997 as a purported consulting services company. RGM Enterprises then became the supposed manager of the RGM Aggressive Growth Fund (RGMA) which LINDA LIVOLSI created in 1999. However, LINDA LIVOLSI never opened a business

bank account for RGM Enterprises until at least 2005, and prior to 2007, had investors wire funds directly to her personal bank account. LINDA LIVOLSI also never filed any Articles of Incorporation with the State of Nevada until October 12, 2006, just prior to civil lawsuits being filed by investors. There has never been a Federal tax return filed for RGM Enterprises, LLC with the Internal Revenue Service.

LINDA LIVOLSI marketed RGMA as a "mid to high risk" investment offering "30 to 40 percent returns," but the investors' funds were subject to a two year "lock up" period. The minimum investment that an investor needed was $100,000 in 1999 and shortly thereafter it was raised to $250,000. In 2007, LIVOLSI raised the minimum to $5,000,000. LINDA LIVOLSI created a "portfolio" for the illusory hedge fund and distributed the false and fraudulent material to potential investors.

In 2003, LINDA LIVOLSI first induced J.M. to "invest" in her RGM Enterprises hedge fund. J.M. eventually invested approximately $550,000. The investment stipulations were that the funds had to be held for two years. J.M. received monthly statements throughout the term of his investment. In May 2006, J.M. requested redemption of his entire investment plus interest based upon the balances in statements he received. He requested $2,569,243.82, but never received his money and he thereafter sued LINDA LIVOLSI in a Clark County, Nevada, court on November 6, 2006.

During the civil lawsuit, J.M. learned that LINDA LIVOLSI never invested his funds, but instead deposited the funds into her personal bank account and used them for other means. On September 21, 2007, J.M. obtained a civil judgment against LINDA LIVOLSI in the amount of the entire $2,569,244 reflected on fraudulent statements she produced. J.M. received $2.5 million from WILLIAM LIVOSI on December 7, 2007, from the approximately $5 million invested by E.B. with LINDA LIVOLSI.

In 2003, LINDA LIVOLSI convinced R.S. to invest in her alleged hedge fund. He first invested approximately $250,000 in 2004. R.S. received statements from LINDA LIVOLSI throughout his investment. He was required to keep his investment in the funds for a two-year grace period. In 2006, R.S. requested redemption of his funds, but did not receive anything until December 28, 2007.

G.G. invested $257,000 with LINDA LIVOLSI on March 6, 2006, and would download her monthly statements from the RGMA website. In 2006, G.G. requested redemption of her funds, but did not receive anything by the time FBI agents interviewed her in September 2007. G.G. did receive the full amount of her investment in December 7, 2007, from WILLIAM LIVOLSI using E.B. invested funds.

B.S. and R.S. invested a combined $407,000 with LINDA LIVOLSI in 2006. They received regular statements showing the disposition of their "investment." On September 22, 2006, they sued LINDA LIVOLSI to have their funds returned to them. During a civil lawsuit LINDA LIVOLSI falsely testified that funds were available to pay investors, but that the funds were frozen due to a separate lawsuit. B.S. and R.S. eventually settled out of court with LINDA LIVOLSI and received $425,000 on December 7, 2007, from WILLIAM LIVOLSI using E.B. invested funds.

LINDA LIVOLSI's fraudulently obtained funds are summarized in the table below.

| Investor | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|
| J.M. | $150,000 | $300,000 | $100,000 | | |
| R.S. | | $243,950 | | | |
| G.G. | | | | $257,000 | |
| R.S. | | | | $357,000 | |
| B.S. | | | | $ 50,000 | |
| E.B. | | | | | $5,015,000 |
| Yearly Totals | $150,000 | $543,950 | $100,000 | $664,000 | $5,015,000 |

7

LINDA LIVOLSI evaded the assessment of her 2004 federal tax liability when she received stolen proceeds income from Nevada victims into her personal Nevada bank account. LINDA LIVOLSI also provided false information to her Nevada tax preparer by failing to disclose her fraudulent investment scheme income. She then signed and filed the false return with the IRS in January 2008. LINDA signed the 2004 tax return on December 30, 2007, and filed the return with the IRS on January 19, 2008. The total additional tax due and owing for 2004 is approximately $166,150. LINDA LIVOLSI also filed fraudulent tax returns for 2003, 2005 and 2006 and failed to file tax returns for 2007 and 2008. The total tax liability for LINDA LIVOLSI for tax years 2003 – 2008 (not including interest and penalties) is approximately $1,109,436 as listed below.

| Year | Approximate Additional Federal Income Tax Due |
|---|---|
| 2003 | $ 32,393 |
| 2004 | $ 166,150 |
| 2005 | -0- |
| 2006 | $ 47,963 |
| 2007 | $ 715,469 |
| 2008 | $ 147,461 |
| Total | $1,109,436 |

The defendant admits that the proceeds obtained directly or indirectly from investors as a result of her fraudulent criminal acts equals at least $6,472,950.

## V.   COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If the defendant does not plead guilty or withdraws her guilty pleas, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting

8

any evidence, argument or representation offered by or on the defendant's behalf. The defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

## VI. APPLICATION OF SENTENCING GUIDELINES PROVISIONS

A.  <u>Discretionary Nature of Sentencing Guidelines</u>.  The defendant acknowledges that the Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") in determining the defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

B.  <u>Offense Level Calculations</u>.  The parties stipulate to the following calculation of the defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not bind the Court, and agree that they will not seek to apply any other specific offense characteristics, enhancements or reductions:

Count 2:    Wire Fraud, 18 U.S.C § 1343

```
Base offense level -            07      U.S.S.G. §§ 2B1.1(a)(1)
Loss greater than $2.5M -       18      U.S.S.G. § 2B1.1(b)(1)(J)
Adjusted Offense Level -        25
Acceptance -                    -2      U.S.S.G. § 3E1.1(a)
Acceptance -                    -1      U.S.S.G. § 3E1.1(b)
Total Offense Level -           22
```

Sentencing guideline range: 41-51 months. Grouping under U.S.S.G. § 3D1.4(a) will increase this sentencing range by two levels resulting in a sentencing guideline range of 51-63 months.

Count 4:    False and Fraudulent Tax Returns; 26 U.S.C. § 7206(1)

```
Base Offense level -            22      U.S.S.G. §§ 2T1.1(a)(1) & 2T4.1(I)
Adjusted Offense Level -        22
Acceptance -                    -2      U.S.S.G. § 3E1.1(a)
```

|  |  |  |
|---|---|---|
| Acceptance - | -1 | U.S.S.G. § 3E1.1(b) |
| Total Offense Level - | 19 | |

Sentencing guideline range:   30-37 months

The defendant acknowledges that the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence notwithstanding any applicable Sentencing Guidelines provisions.

C.   <u>Reduction of Offense Level for Acceptance of Responsibility</u>.  Under USSG §3E1.1(a), the United States will recommend that the defendant receive a two-level downward adjustment for acceptance of responsibility unless she (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when she enters the pleas; (b) fails to truthfully admit facts establishing the amount of restitution owed when she enters her guilty pleas; (c) fails to truthfully admit facts establishing the forfeiture allegations when she enters her guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding her involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw her guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

Under USSG §3E1.1(b), the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the defendant communicated her decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources.

D.   <u>Criminal History Category</u>.  The defendant acknowledges that the Court may base her sentence in part on the defendant's criminal record or criminal history. The Court will determine the defendant's Criminal History Category under the Sentencing Guidelines.

E. <u>Relevant Conduct</u>. The Court may consider any counts dismissed under this Plea Agreement and all other relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

F. <u>Additional Sentencing Information</u>. The stipulated Sentencing Guidelines calculations are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw her guilty plea.

The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for the defendant to withdraw her guilty plea.

## VII. APPLICATION OF SENTENCING STATUTES

A. <u>Maximum Penalty</u>. The maximum penalty for Wire Fraud under 18 U.S.C. §1343 is a 20-year prison sentence, a fine of $250,000, or both. 18 U.S.C. § 3571. The maximum penalty for False and Fraudulent Tax Returns under 26 U.S.C. § 7206(1) is a 3-year prison sentence, a fine of $100,000, or both.

B. <u>Factors Under 18 U.S.C. § 3553</u>. The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the defendant's sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence.

C.  **Parole Abolished.**  The defendant acknowledges that her prison sentence cannot be shortened by early release on parole because parole has been abolished.

D.  **Supervised Release.**  In addition to imprisonment and a fine, the defendant will be subject to a term of supervised release not to exceed three years. 18 U.S.C. § 3583.

Supervised release is a period of time after release from prison during which the defendant will be subject to various restrictions and requirements. If the defendant violates any condition of supervised release, the Court may order the defendant's return to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum prison sentence of 23- years.

E.  **Special Assessment.**  The defendant will pay a $100.00 special assessment per count at the time of sentencing.

## VIII. POSITIONS REGARDING SENTENCE

The United States will be free to argue for the imposition of any sentence within the Sentencing Guidelines range determined by the Court. The defendant acknowledges that the Court does not have to follow that recommendation. This Plea Agreement does not require the United States to file any pre- or post-sentence downward departure motion under USSG § 5K1.1 or Fed. R. Crim. P. 35. The United States reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

The defendant may request a sentence below the Sentencing Guidelines range as calculated in this Plea Agreement, and may seek a downward adjustment pursuant to 18 U.S.C. § 3553 or USSG § 4A1.3(b)(1) from any sentence the Court may impose. The United States however may oppose any such requests.

## IX. RESTITUTION

In exchange for benefits received under this Plea Agreement, the defendant agrees to make full restitution in the amount of $5,015,000 to E.B. and $1,109,436, plus civil interest and penalties, to the Department of the Treasury, Internal Revenue Service, representing all the losses the defendant caused by her schemes or offenses, whether charged or uncharged, pled to or not, and by all of her relevant conduct. 18 U.S.C. § 3663(a)(3). The defendant cannot discharge her restitution obligation through bankruptcy proceedings. The defendant acknowledges that restitution payments and obligations cannot offset or reduce the amount of any forfeiture judgment imposed in this case.

## X. FORFEITURE

The defendant knowingly and voluntarily:

A. Agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of "property" in the amount of $5,015,000;

B. Abandons or forfeits the property to the United States;

C. Relinquishes all right, title, and interest in the property;

D. Waives her right to any abandonment proceedings, any civil administrative forfeiture proceedings, any civil judicial forfeiture proceedings, or any criminal forfeiture proceedings of the property ("proceedings");

E. Waives service of process of any and all documents filed in this action or any proceedings concerning the property arising from the facts and circumstances of this case;

F. Waives any further notice to her, her agents, or her attorney regarding the abandonment or the forfeiture and disposition of the property;

G. Agrees not to file any claim, answer, petition, or other documents in any proceedings concerning the property;

H. Waives the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7 and 32.2, the constitutional requirements, and the constitutional due process requirements of any proceedings concerning the property;

I. Waives her right to a jury trial on the forfeiture of the property;

J. Waives all constitutional, legal, and equitable defenses to the forfeiture or abandonment of the property in any proceedings including, but not limited to (1) constitutional or statutory double jeopardy defenses; and (2) defenses under the Excessive Fines or Cruel and Unusual Punishments Clauses of the Eighth Amendment to the United States Constitution;

K. Agrees to the entry of an Order of Forfeiture of the property to the United States;

L. Agrees that forfeiture is immediately due and payable and subject to immediate collection by the United States;

M. Agrees and understands the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to the abandonment or the forfeiture; and

N. The defendant acknowledges that the amount of the forfeiture may differ from, and may be significantly greater than, the amount of restitution.

## XI. FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, upon request by the Court, the United States, or the Probation Office, the defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning her assets and her ability to pay. The defendant will surrender assets she obtained directly or indirectly as a result of her crimes, and will release funds and property under her control in order to pay any fine, forfeiture, or restitution ordered by the Court.

XII.    THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

   A.    <u>Plea Agreement and Decision to Plead Guilty</u>.  The defendant acknowledges that:

       (1)    She has read this Plea Agreement and understands its terms and conditions;

       (2)    She has had adequate time to discuss this case, the evidence, and this Plea Agreement with her attorney;

       (3)    She has discussed the terms of this Plea Agreement with her attorney;

       (4)    The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

       (5)    She was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when she signed it.

   The defendant understands that she alone decides whether to plead guilty or go to trial, and acknowledges that she has decided to enter her guilty plea knowing of the charges brought against her, her possible defenses, and the benefits and possible detriments of proceeding to trial.  The defendant also acknowledges that she decided to plead guilty voluntarily and that no one coerced or threatened her to enter into this Plea Agreement.

   B.    <u>Waiver of Appeal and Post-Conviction Proceedings</u>.  The defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court; (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

15

The defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to her conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The defendant reserves only the right to appeal any portion of the sentence that is an upward departure from the Sentencing Guidelines range determined by the Court.

The defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

C. <u>Removal/Deportation Consequences.</u> The defendant understands and acknowledges that if she is not a United States citizen, then it is highly probable that she will be permanently removed (deported) from the United States as a consequence of pleading guilty under the terms of this Plea Agreement. The defendant has also been advised if her conviction is for an offense described in 8 U.S.C. § 1101(a)(43), she will be deported and removed from the United States and will not be allowed to return to the United States at any time in the future. The defendant desires to plead guilty regardless of any immigration consequences that may result from her guilty plea, even if the consequence is automatic removal from the United States with no possibility of returning. The defendant acknowledges that she has specifically discussed these removal/deportation consequences with her attorney.

## XIII. ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions. It constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises,

1  agreements or conditions shall have any force or effect unless set forth in writing and signed by
2  all parties or confirmed on the record before the Court.

DANIEL G. BOGDEN,
United States Attorney

DATE 10-3-2014

J. Gregory Damm
Assistant United States Attorney

DATE 10/15/14

Monique Kirtley-Travis
Counsel for the Defendant

DATE X 10/15/14

Linda Livolsi
Defendant