TRANSCRIBED FROM DIGITAL RECORDING

1

1          UNITED STATES DISTRICT COURT

2              DISTRICT OF NEVADA

3      THE HON. PHILIP M. PRO, U.S. DISTRICT JUDGE PRESIDING

4

5  UNITED STATES OF AMERICA,      )
                                  )
6          Plaintiff,             )  Case No. 2:10-cr-578-PMP-GWF
                                  )
7          vs.                    )      Change of Plea Hearing
                                  )         Courtroom 4B
8  LINDA LIVOLSI and              )
   WILLIAM LIVOLSI, JR.,          )
9                                 )
           Defendants.            )
10                                )  C E R T I F I E D   C O P Y

11

12

13              TRANSCRIPT OF PROCEEDINGS

14      Wednesday, October 15, 2014; at 10:07:18 a.m.

15

16

17

18

19
   APPEARANCES:              See Next Page
20
   DIGITALLY RECORDED:       FTR, 10:07:18 a.m.
21
   TRANSCRIBED BY:           HEATHER K. NEWMAN
22                           (702) 464-5828

23

24

   Proceedings recorded by electronic sound recording, transcript
25 produced by mechanical stenography and computer.

TRANSCRIBED FROM DIGITAL RECORDING

2

1  APPEARANCES:

2  For the Plaintiff:

3          UNITED STATES ATTORNEY
         BY:  J. GREGORY DAMM
4          333 South Las Vegas Boulevard, Suite 5000
         Las Vegas, NV  89101
5          (702) 388-6336

6  For Defendant Linda Livolsi:

7          FEDERAL PUBLIC DEFENDER
         BY:  MONIQUE N. KIRTLEY
8              NISHA BROOKS-WHITTINGTON
         411 East Bonneville, Suite 250
9          Las Vegas, NV  89101
         (702) 388-6577
10

   For Defendant William Livolsi, Jr.:
11

          HUNTERTON & ASSOCIATES
12          BY:  C. STANLEY HUNTERTON
         627 South Seventh Street
13          Las Vegas, NV  89101
         (702) 388-0098
14

15

16

17

18

19

20

21

22

23

24

25

TRANSCRIBED FROM DIGITAL RECORDING

3

1    LAS VEGAS, NEVADA; WEDNESDAY, OCTOBER 15, 2014; AT 10:07 A.M.

2                              --oOo--

3                    P R O C E E D I N G S

4

5         COURTROOM ADMINISTRATOR:  All rise.

6         THE COURT:  Good morning everybody.  Have a seat,

7    please.

8         All right.  We are convened in CS-10-578, United

9    States of America vs. Linda and William Livolsi.  The record

10   should reflect the presence of Ms. Livolsi, together with

11   counsel Monique Kirtley and, Mr. William Livolsi is present

12   with counsel Mr. Stanley Hunterton.  On behalf of plaintiff,

13   United States, Mr. Gregg Damm is present.  We also have

14   Nisha Brooks-Whittington with Ms. Livolsi and, of course, both

15   defendants.

16        I've been provided with Plea Agreement memoranda that

17   provide for resolution of the case against Ms. Livolsi based on

18   her entry of plea to two charges, the charges in Counts Two and

19   Four of the Superseding Indictment in this case, Count Two

20   charging Wire Fraud, violation of 18, U.S. Code, Section 1343,

21   and Count Four, False and Fraudulent Tax Returns in violation

22   of 26, U.S. Code, Section 7206, Subsection 1, I believe that's

23   for the calendar tax year 2004 as I recall from the Indictment.

24        In Mr. Livolsi's case, his agreement is a little bit

25   different in that he would be entering a plea only as to the

TRANSCRIBED FROM DIGITAL RECORDING

4

1    charge of Wire Fraud in Count Two in violation of 18, U.S.

2    Code, Section 1343.

3            Are the parties ready to proceed with their entries

4    of plea at this point?

5            MR. HUNTERTON:  Yes, Judge.

6            MS. KIRTLEY:  Yes, Your Honor.

7            THE COURT:  All right.  I'd ask Ms. Livolsi, you and

8    Mr. Livolsi, you both stand and raise your right hands and the

9    clerk will administer the oath to you to respond to my

10   questions truthfully.

11           COURTROOM ADMINISTRATOR:  Do you solemnly swear that

12   the testimony you're about to give in the matter now before

13   this Court will be the truth, the whole truth, and nothing but

14   the truth, so help you God?

15           MR. WILLIAM LIVOLSI, JR.:  I do.

16           MS. LINDA LIVOLSI:  I do.

17           THE COURT:  All right.  You can both remain seated so

18   we can pick you up on the microphones right there and, we'll

19   begin.  While the questions I'm going to ask you are very

20   similar, some of them are individualized and so I'll direct

21   them to you either individually or collectively but first of

22   all, Ms. Livolsi, is Linda Livolsi your true name?

23           MS. LINDA LIVOLSI:  Yes.

24           THE COURT:  And how old are you?

25           MS. LINDA LIVOLSI:  46.

TRANSCRIBED FROM DIGITAL RECORDING

5

1          THE COURT:  And how far did you go in school?

2          MS. LINDA LIVOLSI:  Pardon me?

3          THE COURT:  How far did you go in school?  How many

4    years of school did you have?  High school?  College?

5          MS. LINDA LIVOLSI:  I graduated from college in 1990.

6          THE COURT:  All right.  Ms. Livolsi, are you at this

7    time under the care of a physician or a psychiatrist?  Now, I

8    know the answer to this question --

9          MS. LINDA LIVOLSI:  Several of them, yes.

10         THE COURT:  Yeah.

11         You obviously have been in the record in this case,

12   there's a lot of medical treatment.  At this time are you under

13   or are you taking any medications that are prescribed by your

14   doctors?

15         MS. LINDA LIVOLSI:  Yes.

16         THE COURT:  And what kinds of medications are you

17   taking?

18         MS. LINDA LIVOLSI:  Strong painkillers to, umm,

19   anxiety meds, rheumatology medicine, antibiotics, numerous

20   meds.

21         THE COURT:  All right.  And with regard to the pain

22   medication, did you take those today?

23         MS. LINDA LIVOLSI:  Yes.

24         THE COURT:  Do you know what kind of pain medication

25   it is, what's it called?

TRANSCRIBED FROM DIGITAL RECORDING

6

1           MS. LINDA LIVOLSI:  Yes.  OxyContin and Oxycodone.

2           THE COURT:  All right.  Do those medications

3    interfere in any way with your ability to understand what I'm

4    saying to you here today in court or to discuss your case with

5    your attorneys?

6           MS. LINDA LIVOLSI:  No.

7           THE COURT:  And, Ms. Kirtley and

8    Ms. Brooks-Whittington, have you noted any difficulties in

9    communication, being understood with Ms. Livolsi, either today

10   or previous to today in discussing the Plea Agreement in this

11   case?

12          MS. KIRTLEY:  No, Your Honor.

13          MS. BROOKS-WHITTINGTON:  No, Your Honor.

14          THE COURT:  All right.

15          And, Mr. Livolsi, let me ask you, is William Livolsi,

16   Jr. your true name, sir?

17          MR. WILLIAM LIVOLSI, JR.:  Yes.

18          THE COURT:  And how old are you?

19          MR. WILLIAM LIVOLSI, JR.:  I'm 55.

20          THE COURT:  And how far did you go in school?

21          MR. WILLIAM LIVOLSI, JR.:  I graduated college.

22          THE COURT:  Okay.

23          MR. WILLIAM LIVOLSI, JR.:  In 1983.

24          THE COURT:  Are you at this time under the care of a

25   physician or a psychiatrist for any reason?

TRANSCRIBED FROM DIGITAL RECORDING

7

1          MR. WILLIAM LIVOLSI, JR.:  I do see a psychiatrist,

2   yes.

3          THE COURT:  Are you taking any medications prescribed

4   by that doctor?

5          MR. WILLIAM LIVOLSI, JR.:  I am.

6          THE COURT:  What kind of medication?

7          MR. WILLIAM LIVOLSI, JR.:  I take antianxiety

8   medication as well as antidepressant medicine.

9          THE COURT:  All right.  Do those medications in any

10  way interfere with your ability to understand what I'm saying

11  here today?

12         MR. WILLIAM LIVOLSI, JR.:  No.

13         THE COURT:  And, do they interfere with your ability

14  to communicate and to understand your attorney, Mr. Hunterton?

15         MR. WILLIAM LIVOLSI, JR.:  No, it does not.

16         THE COURT:  Mr. Hunterton, do you agree with that;

17  have you had any difficulties in either understanding your

18  client or making yourself understood to him in connection with

19  this case and particularly in connection with today's

20  proceedings and the Plea Agreement?

21         MR. HUNTERTON:  I agree with my client's statement

22  and I have had no such difficulties.

23         THE COURT:  All right.  Thank you.

24         Now, do both defendants waive the formal reading of

25  the respective counts of the Superseding Indictment?

TRANSCRIBED FROM DIGITAL RECORDING

8

1        MS. KIRTLEY:  Yes, Your Honor.

2        MR. HUNTERTON:  Yes.

3        THE COURT:  The Plea Agreements that have been

4   submitted, I want to make sure that both of you have had a full

5   opportunity to read those Plea Agreements.

6        Ms. Livolsi, have you read the Plea Agreement that

7   applies in your case before you signed it?

8        MS. LINDA LIVOLSI:  Yes.

9        THE COURT:  And before you signed that document, did

10  you have an opportunity to discuss the contents of the

11  Plea Agreement fully with your attorneys?

12        MS. LINDA LIVOLSI:  Yes.

13        THE COURT:  You could ask them questions and they

14  could give you their legal advice; is that correct?

15        MS. LINDA LIVOLSI:  Yes.

16        THE COURT:  All right.  And does the Plea Agreement,

17  as far as you understand it, include all of the agreements

18  between you, through your attorneys, and the Government?  In

19  other words, is there any agreement that's not contained in the

20  Plea Agreement?

21        MS. LINDA LIVOLSI:  Not that I'm aware of.

22        THE COURT:  All right.

23        Mr. Livolsi, same questions to you.  Did you have the

24  opportunity -- or have you had the opportunity to read the

25  Plea Agreement that applies in your case?

TRANSCRIBED FROM DIGITAL RECORDING

9

1          MR. WILLIAM LIVOLSI, JR.:  I have.

2          THE COURT:  And before you signed that agreement, did

3    you have the opportunity to discuss it fully with your

4    attorney, Mr. Hunterton?

5          MR. WILLIAM LIVOLSI, JR.:  I did.

6          THE COURT:  And are there any side agreements, other

7    agreements that are not encompassed within the written

8    Plea Agreement?

9          MR. WILLIAM LIVOLSI, JR.:  No.  No, sir.

10          THE COURT:  And, Mr. Damm, let me ask you, have there

11    been any previous tenders of a Plea Agreement that were more

12    beneficial to either defendant than the current Plea Agreement?

13          MR. DAMM:  Your Honor, that -- that's a little bit

14    hard for me to say because I was not the first attorney

15    handling this case.

16          THE COURT:  Right, Mr. Chu was.

17          MR. DAMM:  Mr. Chu had the case initially.

18          THE COURT:  Yeah.

19          MR. DAMM:  And originally only Linda Livolsi was

20    charged.

21          THE COURT:  Correct.

22          MR. DAMM:  And, I'm sure Mr. Chu would have been

23    receptive to a settlement with her based upon the original

24    Indictment.  However, there was no such agreement ever reached

25    and there was therefore the Superseding Indictment which is, of

TRANSCRIBED FROM DIGITAL RECORDING

10

1    course, less favorable to Mr. Livolsi.

2            THE COURT:  Yeah.  Since the return of the

3    Superseding Indictment in January of this year have there been

4    any prior offers by the Government that would in your view be

5    more beneficial to either Ms. Livolsi or Mr. Livolsi?

6            MR. DAMM:  No, unfortunately.

7            THE COURT:  And, Ms. Kirtley, I realize you weren't

8    the original attorney for Ms. Livolsi but -- at least I don't

9    think you were.

10           MS. KIRTLEY:  No, I was not, Your Honor.

11           THE COURT:  But, since the return of the

12   Superseding Indictment in January -- in January of this year,

13   have there been any more lenient Plea Agreements offered by the

14   Government?

15           MS. KIRTLEY:  No, there hasn't, Your Honor.

16           THE COURT:  And Ms. Livolsi, have you understood

17   there were any such more beneficial Plea Agreements to you

18   offered by the Government in the past 10 months?

19           MS. LINDA LIVOLSI:  No.

20           THE COURT:  And, Mr. Livolsi and Mr. Hunterton, the

21   same questions.  Are you -- either of you aware of any previous

22   offers of a resolution by plea which you would deem more

23   beneficial than the one being offered today?

24           MR. HUNTERTON:  No, there have not been.

25           MR. WILLIAM LIVOLSI, JR.:  No, sir.

TRANSCRIBED FROM DIGITAL RECORDING

11

1          THE COURT:  Okay.  There are a number of questions

2     then that I must ask each of you but, the first thing I want to

3     do is to call upon Government counsel to briefly summarize the

4     Plea Agreements.  Now, you've told me that you both read them,

5     you've talked to your attorneys about them.  They contain a lot

6     of provisions, some of which may not seem particularly

7     significant and indeed they may not be in your particular case

8     but, I want the Government to summarize the Plea Agreement as

9     to each of you and then I'll come back and ask you and your

10    attorneys whether they agree with that summary.

11          Mr. Damm.

12          MR. DAMM:  Yes, thank you, Your Honor.

13          Your Honor, starting first with Mrs. Livolsi and I'll

14    go through the sections, I'll refer to both defendants if there

15    are any differences rather than go through each

16    Plea Agreement --

17          THE COURT:  That's -- that's a good idea.  Certainly

18    as to the pertinent form charge, it would be the same, the

19    additive would be the specific tax count as to Ms. Livolsi.

20          MR. DAMM:  Correct, Your Honor.

21          With respect to both of the defendants, the

22    Plea Agreement outlines the scope of the agreement, that being

23    between the United States and the individual defendants and,

24    the Plea Agreements indicate that these Plea Agreements bind

25    the defendant and the United States Attorney's Office for the

1   District of Nevada, but they do not bind any other prosecuting,

2   administrative, or regulatory authority of the United States,

3   Probation, or this Court.

4          The Plea Agreements both set forth the parties'

5   agreement regarding the criminal charges referenced in the

6   Plea Agreement and applicable sentences, fines, restitution,

7   and forfeiture.

8          The Plea Agreement does not control or prohibit the

9   United States or any agency or third party from seeking any

10  other civil or administrative remedies, directly or indirectly,

11  against the defendants.

12         With respect to the disposition of charges, with

13  respect to Ms. Livolsi, the -- Ms. Livolsi agrees to plead

14  guilty to Count Two, Wire Fraud, in violation of Title 18,

15  United States Code, Section 1343 and to Count Four, as the

16  Court has indicated, to False and Fraudulent Tax Returns in

17  violation of 26, United States Code, Section 7206(1) for the

18  2004 tax year.

19         The defendant also agrees -- or both defendants do --

20  agree to the forfeiture of the property set forth in the

21  forfeiture allegations of the Indictment.

22         Now there has been a little discussion between myself

23  and counsel for Ms. Livolsi.  They seem to object to the in

24  personam nature of the proposed forfeiture order but I would

25  point out to the Court and to defense counsel, to the language

TRANSCRIBED FROM DIGITAL RECORDING

13

1   in the forfeiture allegation in the Superseding Indictment.

2   This is Document No. 110, at the page of -- at the top of Page

3   9, clearly indicates that the defendants' -- the forfeiture

4   allegation as to both defendants is an in personam criminal

5   forfeiture money judgment up to 5,015,000 dollars in United

6   States currency.

7          THE COURT:  Let me ask, are any of those proceeds

8   that are being sought for forfeiture actually tangible assets

9   that are located at this point?

10         MR. DAMM:  There is a business, Your Honor, that --

11         THE COURT:  Right.

12         MR. DAMM:  -- that the defendants apparently owned at

13  one time.  I'm not sure what the status is of that business.

14         THE COURT:  There's not 5-plus million in some bank

15  account somewhere, in other words?

16         MR. DAMM:  No, not -- not that we're aware of,

17  Your Honor.

18         THE COURT:  All right.  All right.

19         Let me interrupt then and, Ms. Kirtley, it appears it

20  was you that had the issue.  Go ahead and tell me what --

21         MS. KIRTLEY:  Yes, Your Honor.

22         I'm not sure what business the Government is talking

23  about.  If they're talking about the restaurant, that

24  restaurant no longer exists.  That restaurant burnt down awhile

25  back -- oh, there was a fire in the restaurant.

HEATHER K. NEWMAN - (702) 464-5828

TRANSCRIBED FROM DIGITAL RECORDING

14

1          MS. LINDA LIVOLSI:  No.

2          MS. KIRTLEY:  Okay.

3          THE COURT:  Well, certainly, the Government, if it's

4     forfeiting proceedings, would like --

5          MS. KIRTLEY:  Right.

6          THE COURT:  -- resources or assets wherever it could

7     find them.

8          MS. KIRTLEY:  Right.  This -- when the Government

9     presented to me the Order of Forfeiture and the language in the

10    Order of Forfeiture says that Linda Grogg agreed to the

11    forfeiture of the in personam criminal forfeiture money

12    judgment as set forth in the Plea Agreement.  Now, when I look

13    at the language in the Plea Agreement, it doesn't say "in

14    personam" and I just want the language to match.  The

15    Government told me it means the same thing.  And I asked the

16    Government, well, if it means the same thing, then have the

17    language match as it matches in the Plea Agreement and take out

18    the in personam.  And that, I think, was the basic request or

19    question for the Government.

20         THE COURT:  But the Indictment, the

21    Superseding Indictment does contain the reference --

22         MS. KIRTLEY:  The Indictment does, but I just wanted

23    the Order of Forfeiture to match the language that's in the

24    Plea Agreement, because the Order of Forfeiture goes back to

25    the Plea Agreement and it says in the Plea Agreement,

HEATHER K. NEWMAN - (702) 464-5828

TRANSCRIBED FROM DIGITAL RECORDING

15

1   Forfeiture, in personam forfeiture but the Plea Agreement does

2   not say in personam forfeiture.  If -- and the Government's

3   telling me it means the same thing, then have the -- each

4   language match.  If the Order of Forfeiture --

5            THE COURT:  Well, you're saying that we need to

6   change the Plea Agreement to provide that it's in personam --

7            MS. KIRTLEY:  Or he can change the Order of

8   Forfeiture and have it match because he refers to the

9   Plea Agreement in the Order of Forfeiture.

10            THE COURT:  Right, okay.

11            MS. KIRTLEY:  I mean, so just have it just match.  If

12   it means the same thing, then just have the language match.

13            THE COURT:  How do you propose we resolve that?

14            MR. HUNTERTON:  Your Honor --

15            THE COURT:  Yeah, Mr. Hunterton.

16            MR. HUNTERTON:  I'd like -- I'd like to join in that

17   objection.  I think the Order of Forfeiture is inappropriate

18   with the phrase "in personam" in it for the reasons suggested

19   by Ms. Kirtley.  It's not in the Plea Agreement and secondly,

20   as Your Honor well knows, forfeiture proceedings by the

21   Government may go on for years and years and I don't think that

22   the Livolsis ought to be subject to having their home proceeded

23   against or any after-acquired property.  I think Your Honor's

24   question was right on point, if there are 5 million dollars

25   sitting in a joint husband and wife bank account under the name

TRANSCRIBED FROM DIGITAL RECORDING

16

1   William and Linda Livolsi, that might be appropriate and it

2   might have been appropriate to have them plea to that kind of

3   personal forfeiture, but as we all know, forfeiture is an in

4   rem proceeding.

5           THE COURT:  Right.

6           MR. HUNTERTON:  And the Government's entitled to go

7   after either the 5 million cash or to real or personal property

8   that they can trace it to.  What they are not entitled to is to

9   go after the Livolsis' personal property for the rest of their

10  lives that had nothing to do with the crimes.

11          THE COURT:  Doesn't the Plea Agreement contemplate

12  restitution as well?

13          MS. KIRTLEY:  Yes, it does, Your Honor.

14          THE COURT:  And, restitution of approximately the

15  same amount?

16          MS. KIRTLEY:  5 million for the wire fraud and a

17  million for --

18          THE COURT:  1 million on the -- something on the tax?

19          MS. KIRTLEY:  Taxes, that's correct.

20          THE COURT:  So, Mr. Damm, as I understand it, the --

21  and obviously we've gone round and round and the circuit writes

22  to this all the time, the issue relating to double penalty,

23  restitution order and forfeiture, you collect twice.

24          Isn't the attempt or the interest of the Government

25  in recovering the restitution, the amount of money to address

HEATHER K. NEWMAN - (702) 464-5828

TRANSCRIBED FROM DIGITAL RECORDING

17

1    any victims accomplished through the restitution, which would

2    be something for which joint and several liability would apply

3    to the defendants, as opposed to the forfeiture being in

4    personam versus in rem?

5         MR. DAMM:  The Government, as I understand it,

6    Your Honor, has -- has two interests, which are clearly

7    delineated in the Plea Agreement; one is the in personam

8    forfeiture judgment, which is designed to remove or to -- to

9    address the criminal proceeds that the defendants received and,

10   the restitution, which is designed to make the victim whole.

11   They're two separate interests and --

12        THE COURT:  So 5 million obligation, the Government

13   would be able to collect 10 million, in essence?

14        MR. DAMM:  That's what the law appears to provide

15   for, Your Honor.

16        THE COURT:  Um-hum.

17        MR. DAMM:  And -- and that's -- that's what the

18   Ninth Circuit has indicated.

19        THE COURT:  Okay.

20        MR. DAMM:  And that's -- the Plea Agreement, in my

21   opinion, is clear and unambiguous.  As I've indicated, if we

22   looked at Page 2 of the Plea Agreement, Line 13, it says, "The

23   defendant also agrees to the forfeiture of the property set

24   forth in the forfeiture allegations of the Indictment."  So the

25   Plea Agreement refers, as it should, necessarily, to the

TRANSCRIBED FROM DIGITAL RECORDING

18

1   Indictment and the Indictment clearly indicates an in personam

2   judgment of 5,015,000 dollars.

3           THE COURT:  Why doesn't the Plea Agreement articulate

4   that same language that's in the Indictment at Page 9 -- Page 8

5   and 9 -- Page 8 and 9 . . . well, it's a very, very long

6   sentence, Paragraph 2, beginning on Page 8, "Upon conviction of

7   the felony offenses in Counts One and Two, defendants shall

8   forfeit to the United States any property which constitutes or

9   is derived from proceeds traceable to the violations an in

10  personam criminal forfeiture money judgment up to 5,015,000

11  dollars" -- it's kind of a confusing -- such offense an in

12  personam -- should that have been an in personam?

13          MR. DAMM:  Your Honor, I -- I would have to defer to

14  someone from my -- our asset forfeiture section.

15          THE COURT:  Well, otherwise what I'm hearing is we

16  don't have an agreement.

17          MR. DAMM:  Well it sounds that way to me, Your Honor.

18          THE COURT:  Because the -- the defendants are not

19  agreeing to a forfeiture which contains the reference to in

20  personam forfeiture as opposed to against the property in rem,

21  and the Government is not agreeing to do otherwise then.

22          MR. DAMM:  Your Honor, I'm not at liberty, as I stand

23  here today, to relinquish what we agreed to in the

24  Plea Agreement.  Now, perhaps upon consultation with others in

25  my office there may be some different resolution but, but as I

TRANSCRIBED FROM DIGITAL RECORDING

1    read the Plea Agreement, it's clear and unambiguous and I'm

2    really kind of astounded at the objection.

3            THE COURT:  Well, the language does, at Page 2 of the

4    agreement, Lines 13, 14, the defendant also agrees to the

5    forfeiture of the property set forth in the forfeiture

6    allegations of the Indictment, which do contain the reference

7    to in personam.  You know, at the end of the day, it just --

8    it's inconceivable to me that it makes . . .  Well, it could

9    make a difference as Mr. Hunterton points out.  We have seen

10   examples of that.

11           The way I read the Plea Agreement, Ms. Kirtley, and

12   Mr. Hunterton, it does invoke the Indictment, in other words, I

13   don't see that it's inconsistent.  True, the Plea Agreement

14   doesn't utter the talismanic phrase "in personam," but it

15   incorporates or references the allegations in the Indictment

16   which do contain that reference.  So it seems to me that's what

17   the agreement says, what I'm hearing now is that's not what

18   defendants thought it said and they don't agree to that.  And,

19   so, if that's a deal breaker, then I guess -- you know, we

20   don't have a meeting of the minds, then we can't have an

21   agreement that resolves the case.  We'd have to just resolve it

22   at trial.  I think that's awfully unfortunate but . . .

23           MR. HUNTERTON:  Your Honor . . .

24           THE COURT:  Yes.

25           MR. HUNTERTON:  I think the dynamic of the problem

TRANSCRIBED FROM DIGITAL RECORDING

20

1  here this morning is that the Plea Agreement didn't say in

2  personam.

3           THE COURT:  Right, but it references the Indictment

4  that does.

5           MR. HUNTERTON:  If it had said in personam, I would

6  have had a specific discussion with Mr. Livolsi --

7           THE COURT:  Sure.

8           MR. HUNTERTON:  -- about the implication or

9  non-implications of that.

10          THE COURT:  Yeah.

11          MR. HUNTERTON:  I didn't have that conversation --

12          THE COURT:  Yeah.

13          MR. HUNTERTON:  -- because it was 25 minutes ago that

14  we first saw this language.

15          Now, I have agreed on behalf of a lot of clients to

16  forfeiture.

17          THE COURT:  Yeah.

18          MR. HUNTERTON:  And I have had pursued some people.

19          THE COURT:  I'm sure you have, yeah.

20          MR. HUNTERTON:  And, maybe I'm forgetting but, I

21  don't ever remember seeing the phrase "in personam" in the

22  Order of Forfeiture and that's what concerns me.  Is it a deal

23  breaker?  I've got to say in all candor to the Court, it should

24  not be.

25          THE COURT:  Yeah.

TRANSCRIBED FROM DIGITAL RECORDING

21

1           MR. HUNTERTON:  I think the problem is that we were

2    caught by surprise with this and perhaps the appropriate

3    resolution that -- now that the cards are on the table, is for

4    Mr. Damm to adjourn to his office and see if he can get

5    authority to take that out and we --

6           THE COURT:  And you and your clients talk about --

7           MR. HUNTERTON:  And our clients talk about whether it

8    makes any difference.

9           THE COURT:  Well, let's -- let's take some time to do

10   just that, because you need to talk to your clients about it,

11   obviously.  And Mr. Damm, you said . . .  Well, I don't recall,

12   I see a million forfeiture orders and I --

13          MR. DAMM:  Our -- our concern, Your Honor, is this

14   put very simply:  The realistic possibility of the defendants

15   ever making 5 million dollars worth of restitution --

16          THE COURT:  Very nil.

17          MR. DAMM:  Is nil.  If they happen to win the

18   lottery, as one of the victims did in this case, and they

19   receive 30 million dollars, then the Government certainly would

20   like to be able to pursue the forfeiture judgment against them

21   for --

22          THE COURT:  For 5 million.

23          MR. DAMM:  -- for 5 million dollars.

24          THE COURT:  Right.

25          MR. DAMM:  That's the -- that's really kind of the

TRANSCRIBED FROM DIGITAL RECORDING

22

1   long and the short of it.  And, I'm reluctant to relinquish

2   that . . . that remedy that the Government has.  And I can --

3   I -- I recall a specific case, the Samuel Davis case where the

4   Ninth Circuit just very recently discussed both the . . . the

5   aspect of restitution and forfeiture.

6           THE COURT:  Yeah.

7           MR. DAMM:  And how they're all, in fact, different

8   remedies and they're not -- it's not double counting.

9           THE COURT:  I -- I've read those same cases.  There's

10  more than one subject on that case.  No, I agree with you and

11  the -- the Plea Agreement does say what you just said it says,

12  that is, it does invoke the Indictment which does contain that

13  language.  That's the way it's charged.  That's the way the

14  Plea Agreement reads.  I can understand if defendants have a

15  misunderstanding of that and I certainly agree with

16  Mr. Hunterton that he needs to talk to Mr. Livolsi,

17  Ms. Kirtley, you need to talk -- and Ms. Brooks-Whittington, to

18  your client, to make sure that they understand that and to make

19  sure it's not a deal breaker.  If it is a deal breaker, then

20  there's -- your client's not forced to plead guilty obviously.

21  But if it's not and she understands and he understands the

22  consequence, then -- the potential consequence -- you can't get

23  blood out of a stone, we all know that, whether it's in

24  personam or in rem.

25          MS. KIRTLEY:  No, I think they're just worried and

HEATHER K. NEWMAN - (702) 464-5828

TRANSCRIBED FROM DIGITAL RECORDING

23

1    Ms. Livolsi is just really worried that at some point when

2    she's off of supervision, supervised release or if she's off of

3    probation, the next thing she knows that she's getting an order

4    to get out of her house because the Government is taking her

5    house from her.  That's all --

6              THE COURT:  Well, the lottery example is a good

7    example.

8              MS. KIRTLEY:  But if she never wins the lottery, she

9    has a house.

10             THE COURT:  Yeah.

11             MS. KIRTLEY:  And that's one of her concerns is, is

12   that, okay, I don't have the 5 million dollars, the Court -- my

13   probation is over with or my supervised release is over with

14   and now here comes the Government telling me to get out of my

15   house because I don't have 5 million dollars, they're going to

16   take substitution of property which is going to be instead of

17   5 million dollars, they're taking my house and that's one of

18   the concerns she has.

19             THE COURT:  The same with the restitution obviously.

20             MS. KIRTLEY:  Right.

21             THE COURT:  It's reduced to a civil judgment.  It's

22   just like --

23             MS. KIRTLEY:  She can have the 5 --

24             THE COURT:  It's like any kind of judgment.

25             MS. KIRTLEY:  Well, she can have the 5 million

HEATHER K. NEWMAN - (702) 464-5828

TRANSCRIBED FROM DIGITAL RECORDING

24

1    restitution paid off and then she has in personam still hanging

2    over her head.

3              THE COURT:  Okay.

4              MS. KIRTLEY:  You know, that could be her house.

5              THE COURT:  No, I understand the concern.  I -- I do

6    understand that.  And, whether it's a realistic or practical

7    term, I don't know.  I'd rather think it's not but, we have

8    seen cases, Mr. Hunterton is familiar with one where it goes on

9    and it can go on.  This is not necessarily a case like that.

10   But if you -- if you need some time to talk to your client

11   about it, take the time to do that and I'll step out while you

12   do so.

13             I see no point in sending Mr. Damm back to talk to

14   the U.S. attorney, we've already got their policy, they've

15   stated it, so . . . I -- I can take a break, whatever you need.

16             MR. HUNTERTON:  Judge, just let me make one

17   suggestion and I don't have authority from my client, let alone

18   Mrs. Livolsi, to commit to this but I wanted Your Honor to hear

19   it so if we can all come to an agreement, we're not then

20   surprising the Court when you come back.

21             I think that if we could carve out the home, which

22   was not purchased with the proceeds of the criminal activity,

23   there's no allegation of that, et cetera, if we could carve out

24   the problem of the home as raised by Ms. Kirtley, that there

25   aren't going to be proceedings pursuant to the forfeiture

HEATHER K. NEWMAN - (702) 464-5828

TRANSCRIBED FROM DIGITAL RECORDING

25

1  against the home, then there isn't anything else to fight about

2  and the hypothetical future lottery is like the hypothetical

3  safe falling on somebody's head; if it happens, it happens.

4            THE COURT:  Right, yeah.

5            MR. HUNTERTON:  That the hope -- the home is a real

6  and current issue.

7            THE COURT:  Okay.  All right.

8            Well, that's something you all could agree to or

9  not --

10            MR. DAMM:  Your Honor, I'm advised by the case agent

11  by both -- both from the FBI and the IRS that the home was

12  purchased with fraudulently obtained proceeds from one of the

13  earlier investors, not the 5 million dollar investigator,

14  but --

15            THE COURT:  So the Government's not in a position to

16  agree to some kind of carve-out or something?

17            MR. DAMM:  No.  We -- in addition, I'm also told that

18  the home is in foreclosure, that the defendants have filed a

19  bankruptcy petition, so, I -- I'm really at a loss to

20  understand what they're arguing about.

21            THE COURT:  Okay.  Well, if they don't have any

22  equity in the home, if they're in foreclosure, then it's a

23  rather moot point.  The home is illusory but, talk to your

24  clients and see if you still have a negotiation.  If you don't,

25  then I can't recall the trial date.  Eileen, remind me.

TRANSCRIBED FROM DIGITAL RECORDING

26

1              (Brief pause in proceedings.)

2              Well, you all probably know, what's the . . .

3              MS. KIRTLEY:  I believe it's the 21st of this month,

4    Your Honor.

5              THE COURT:  Okay.

6              MS. KIRTLEY:  Yeah, it's the 21st.

7              THE COURT:  Okay.

8              MS. KIRTLEY:  At 9:00 a.m.

9              THE COURT:  Well we've got a trial date set then.

10             All right.  We'll take -- we'll take a break and my

11   courtroom deputy will tell me when you all are ready for me to

12   come back in, either up or down and, you know, I defer to you

13   on that.

14             MR. HUNTERTON:  May we use either the courtroom or

15   the anteroom?

16             THE COURT:  You could use both -- either one, if

17   you -- as you wish.

18             MR. HUNTERTON:  Thank you.

19             THE COURT:  We could have Mr. Damm step out --

20             MR. DAMM:  We'll step out, Your Honor.

21             THE COURT:  Yeah, and so you can just use the

22   courtroom, stay comfortable there with all your papers.

23             And Eileen, just let me know as soon as they're

24   ready.

25             And we'll go off the record now so they can . . .

TRANSCRIBED FROM DIGITAL RECORDING

27

1          (Recess was taken at 10:38:44 a.m.)

2          (Proceedings resumed at 10:56:40 a.m.)

3          COURTROOM ADMINISTRATOR:  All rise.

4          THE COURT:  That's all right.

5          Okay.  The parties have had a few minutes to discuss

6 the matter of the forfeiture provision and what resolution do

7 we have?  Mr. Hunterton?

8          MR. HUNTERTON:  On behalf of William Livolsi we are

9 going to withdraw our objection to the phrase "in personam" in

10 the Order of Forfeiture.

11         THE COURT:  All right.

12         MS. KIRTLEY:  We concur with that, too, Your Honor.

13         THE COURT:  All right.

14         I do understand, Ms. Livolsi and Mr. Livolsi, that it

15 is somewhat confusing, the issue, it seems almost Byzantine in

16 a sense but as Mr. Damm articulated, they're separate interests

17 that are being discussed.  And I appreciate as well the

18 impracticality in most cases of recovery of the sums that we're

19 talking about, once, let alone more than once, so this is

20 frequently a sticking point in cases in terms of negotiation

21 and results in a fair amount of confusion, but I think you've

22 all arrived at sensible resolution so, I'll approve the

23 forfeiture orders that were submitted.

24         Go ahead with your summary, Mr. Damm.  You were

25 discussing the forfeiture, you may proceed beyond that.

TRANSCRIBED FROM DIGITAL RECORDING

28

1          MR. DAMM:  Yes, thank you, Your Honor, just to back

2    up for just a minute.

3          With respect to defendant Linda Livolsi, she's agreed

4    to plead guilty to Count Two, the wire fraud count and

5    Count Four, a -- submitting a false and fraudulent income tax

6    returns for the 2004 tax year --

7          THE COURT:  Correct.

8          MR. DAMM:  -- as well as forfeiture.

9          With respect to William Livolsi, he's agreed to plead

10   guilty to Count Two, the wire fraud count and also agrees to

11   the forfeiture.

12         THE COURT:  Right.

13         MR. DAMM:  The Plea Agreement goes on to discuss the

14   waiver of the various rights that the defendants --

15         THE COURT:  Yes, I'll go over those with the

16   defendants in a minute.

17         MR. DAMM:  That they're giving up.

18         The Plea Agreements both indicate that the defendants

19   will not seek to withdraw their guilty pleas after they enter

20   them in court.

21         The United States also agrees not to bring any

22   additional charges against the defendants that culminated in

23   this Plea Agreement except that the Government reserves the

24   right to prosecute for any crime of violence which the

25   defendants may engage in -- which I don't anticipate -- or have

TRANSCRIBED FROM DIGITAL RECORDING

29

1   engaged in.

2           The Plea Agreement then discusses the elements of the

3   offenses.  It discusses the elements of Wire Fraud, which are

4   that defendant knowingly participated in, devised and intended

5   to devise a plan or scheme to defraud, or a scheme or plan for

6   obtaining money or property by means of false or fraudulent

7   pretenses, representations, or promises; secondly, that the

8   statements made or facts submitted as part of the scheme were

9   material, that is, they had a natural tendency to influence or

10  were capable of influencing the person to part with money or

11  property; third, that defendant acted with the intent to

12  defraud, that is, the intent to deceive or cheat; and finally,

13  fourth, that defendant used or caused to be used the wires to

14  carry out or attempt to carry out an essential part of the

15  scheme.  Those would be elements of Count Two with respect to

16  Ms. Livolsi and Count Four, the elements are, that defendant

17  made and signed a tax return for the year 2004 that she knew

18  contained false and incorrect information as to a material

19  matter; secondly, that the return contained a written

20  declaration that it was being signed subject to the penalties

21  of perjury; and third, that in filing the false tax return, the

22  defendant acted willfully.

23          THE COURT:  Let me interrupt again for one second.

24  Ms. Livolsi and Mr. Livolsi, those essential elements, I want

25  to make sure you understand, those are the things the

TRANSCRIBED FROM DIGITAL RECORDING

30

1    Government would have to prove by its evidence if your case

2    went to trial.  And, I want to make sure you understand, those

3    are what they would have to prove to a jury beyond a reasonable

4    doubt.

5              Do you understand that as to Count Two, Mr. Livolsi?

6              MR. WILLIAM LIVOLSI, JR.:  I do.

7              THE COURT:  And, Ms. Livolsi, as to Counts Two and

8    Four, do you understand that?

9              MS. LINDA LIVOLSI:  Yes.

10             THE COURT:  Okay.  Go ahead.

11             MR. DAMM:  Thank you, Your Honor.

12             The next section of the Plea Agreements, Section IV

13   deal with the facts supporting the guilty pleas, which the

14   defendants acknowledge that the United States could prove in

15   the event the matter would go to trial, they also waive any

16   potential future claim of the facts that they admit to in the

17   Plea Agreement were insufficient to satisfy the elements of the

18   charged offenses, and that they both admit and declare under

19   penalties of perjury the facts set forth in their respective

20   Plea Agreements are true and correct.

21             THE COURT:  And, Ms. Livolsi, have you read those

22   factual statements that begin on Page 4 of the Plea Agreement,

23   Line 13 and they proceed over to Page 19 -- I'm sorry, Page 8,

24   Line 19, have you read those facts?

25             MS. LINDA LIVOLSI:  Yes.

TRANSCRIBED FROM DIGITAL RECORDING

31

1          THE COURT:  And do you admit to those facts, that the
2   Government could prove those beyond a reasonable doubt?
3          MS. LINDA LIVOLSI:  Yes.
4          THE COURT:  And, Mr. Livolsi, the same question to
5   you though yours do not reference the tax violation since
6   that's not pertinent to you but, the statement of facts that
7   begins at Page 3, Line 23 of your Plea Agreement and continues
8   over to Page 8, Line 19, have you read those factual
9   statements?
10         MR. WILLIAM LIVOLSI, JR.:  I have.
11         THE COURT:  And do you agree that the Government
12  could prove those beyond a reasonable doubt and admit those
13  facts?
14         MR. WILLIAM LIVOLSI, JR.:  Yes, sir.
15         THE COURT:  Okay.  All right.
16         Go ahead.
17         MR. DAMM:  Thank you, Your Honor.
18         The next section, Section V, deals with the
19  collateral use of the factual admission that the defendants
20  have just made and the Plea Agreement indicates that under
21  certain circumstances, those admissions can be used against
22  them.
23         The next section, Section VI, deals with the
24  application of the advisory sentencing guidelines and for
25  Ms. Livolsi, calculates the Wire Fraud Total Offense Level at a

HEATHER K. NEWMAN - (702) 464-5828

 1    Level 22, calculates the fraudulent tax return guideline at a

 2    Total Offense Level of 19, then considers grouping which adds

 3    an additional two levels resulting in a projected advisory

 4    sentencing guideline range for Ms. Livolsi of 51 to 63 months,

 5    realizing, of course, that this is the calculation made by the

 6    parties.

 7              THE COURT:  Right.

 8              MR. DAMM:  Which may be different than that reached

 9    by Probation and/or this Court.

10              The -- the calculations for Mr. William Livolsi are a

11    Total Offense Level of 20 and, of course, no tax guideline

12    calculation with a projected sentencing guideline range of 33

13    to 41 months.

14              The Plea Agreement goes on to discuss the reduction

15    in the offense level for acceptance of responsibility and it is

16    the position of the United States at the present time that the

17    United States will afford the -- both defendants the full

18    reduction of a 3 point reduction for acceptance of

19    responsibility.  That complies with the 2 points under 3E1.1(a)

20    and the additional point under 3E1.1(b).

21              The Plea Agreement then discusses the fact that the

22    Court will base the defendants' sentence in part based upon

23    their criminal record or criminal history.

24              Section VII of the Plea Agreement discusses the

25    maximum penalties and advises defendant Linda Livolsi that the

TRANSCRIBED FROM DIGITAL RECORDING

33

1   maximum penalty for Wire Fraud is a 20-year prison sentence, a

2   fine of $250,000, or both; the maximum penalty for filing a

3   fraudulent false tax return is a 3-year prison sentence and a

4   fine of $100,000, or both, and the penalty, likewise, for

5   Mr. William Livolsi is 20 years and/or a fine of $250,000.

6          The Plea Agreement indicates that there will be a

7   term of supervised release not to exceed 3 years for each

8   defendant; that the statutory maximum prison sentence for

9   Ms. Linda Livolsi is 23 years, that's a combination of the

10  Wire Fraud plus the penalty for the tax evasion; and that there

11  will be a special assessment of $100 per count.  And the same

12  is true for Mr. William Livolsi except that the maximum prison

13  sentence is only 20 years reflecting the Wire Fraud count and

14  the 100 dollar special assessment.

15         With respect to the Government's position regarding

16  sentencing, for both defendants, the United States will be free

17  to argue for the imposition of any sentence within the

18  sentencing guidelines range determined by the Court.  The

19  defendant acknowledges that the Court does not have to follow

20  that recommendation and the Plea Agreement does not require the

21  United States to file any pre- or post-sentence downward

22  departure motion under either United States Sentencing

23  Guidelines, Section 5K1.1 or the Federal Rule of Criminal

24  Procedure 35.  And the United States reserves the right to

25  defend any lawfully imposed sentence on appeal or in any

TRANSCRIBED FROM DIGITAL RECORDING

34

1   post-conviction litigation.

2           The defendants, in both cases, may request a sentence

3   below the sentencing guidelines range as calculated in this

4   Plea Agreement and may seek a downward adjustment pursuant to

5   Title 18 of the United States Code, Section 3553, or United

6   States Code Sentencing Guideline, Section 4A1.3(b)(1) from any

7   sentence the Court may impose.  The United States, however,

8   reserves the right to oppose any such request.

9           With respect to restitution, both defendants agree to

10  make restitution in the amount of 5,015,000 dollars to the

11  victim of the wire fraud in this case and additionally,

12  defendant Linda Livolsi agrees to make restitution to the

13  Internal Revenue Service in the amount of 1,109,446 dollars,

14  plus civil interest and penalties as may be calculated and

15  imposed by the Internal Revenue Service.

16          We've already discussed the --

17          THE COURT:  Right, you don't need to go back over

18  that.

19          MR. DAMM:  -- forfeiture.

20          Section XI of the Plea Agreements talks about the

21  obligation of the defendants to provide this Court, the

22  United States, and the Probation Office with accurate and

23  complete financial information, to submit sworn statements

24  and/or give depositions under oath concerning their assets and

25  their ability to pay.  The defendants will surrender assets

TRANSCRIBED FROM DIGITAL RECORDING

35

1 obtained, directly or indirectly, as a result of their crimes

2 and will release funds and property under their control in

3 order to pay any fine, forfeiture, or restitution ordered by

4 the Court.

5    Section XII of the Plea Agreement, again, talks about

6 the defendants' acknowledgements and waivers.  And

7 specifically, Section XII(B) talks about the defendants' waiver

8 of their right to appeal and including direct appeal and

9 post-conviction proceedings.  The defendants knowingly and

10 expressly waive the right to appeal any sentence imposed within

11 or below the applicable sentencing guideline range as

12 determined by the Court; the right to appeal the manner in

13 which the Court determined that sentence on the grounds set

14 forth in 18, United States Code, Section 3742; and the right to

15 appeal any other aspect of the conviction or sentence, and any

16 order of restitution or forfeiture.

17    The defendants also knowingly and expressly waive all

18 collateral challenges, including any claims under 28, United

19 States Code, Section 2255 to their conviction, sentence, and

20 the procedure by which the Court adjudicated guilt and imposed

21 sentence, except non-waivable claims of ineffective assistance

22 of counsel.  The defendants reserve only the right to appeal

23 any portion of the sentence which is an upward departure from

24 the sentencing guidelines range determined by the Court.

25    The defendants acknowledge that the United States is

TRANSCRIBED FROM DIGITAL RECORDING

36

1    not obligated or required to preserve any evidence obtained in

2    the investigation of this case.

3            The next section, C, discusses removal and

4    deportation consequences.

5            THE COURT:  Is there an issue as to the citizenship

6    of either defendant?

7            MR. DAMM:  Not that I'm aware of, Your Honor.

8            And, finally, Section XIII indicates that this

9    Plea Agreement resulted from an arm's length negotiation in

10   which both parties bargained for and received valuable benefits

11   in exchange for valuable concessions made by the United States.

12   Constitutes the entire agreement negotiated and agreed to by

13   the parties.  No promises, agreements, or conditions, other

14   than those set forth in this agreement, have been made or

15   implied by the defendant, the defendant's attorney, or the

16   United States and no additional promise, agreements, or

17   conditions shall have any force or effect unless set forth in

18   writing and signed by all parties or confirmed on the record

19   before this Court.

20           THE COURT:  Thank you, Mr. Damm.

21           Ms. Kirtley, do you agree that's an accurate

22   statement of the Plea Agreement?

23           MS. KIRTLEY:  Yes, Your Honor.

24           THE COURT:  And Ms. Livolsi, does that correspond

25   with your understanding of the Plea Agreement?

TRANSCRIBED FROM DIGITAL RECORDING

37

1          MS. LINDA LIVOLSI:  Yes.

2          THE COURT:  And, Mr. Hunterton, same question for

3    Mr. Livolsi.

4          MR. HUNTERTON:  Yes.

5          THE COURT:  And Mr. Livolsi, does that correspond

6    with your understanding of the Plea Agreement?

7          MR. WILLIAM LIVOLSI, JR.:  Yes, sir.

8          THE COURT:  Now, in accord with the Plea Agreements

9    that were just read by Mr. Damm, Ms. Livolsi, how do you plead

10   to the charge in Count Two of Wire Fraud and Count Four, making

11   a False and Fraudulent Tax Return, guilty or not guilty to

12   those counts?

13         MS. LINDA LIVOLSI:  Guilty.

14         THE COURT:  And Mr. Livolsi, as to the Wire Fraud

15   count in Count Two, how do you plead to that charge, sir?

16         MR. WILLIAM LIVOLSI, JR.:  Guilty.

17         THE COURT:  I realize the promises in the

18   Plea Agreement affect your judgment to plead guilty here today,

19   but except for the promises in the Plea Agreement, has anybody

20   made any other promises to you or threats to you, or threats

21   and promises to anyone close to you to force you to plead

22   guilty here today?

23         Ms. Livolsi?

24         MS. LINDA LIVOLSI:  No.

25         THE COURT:  And Mr. Livolsi?

TRANSCRIBED FROM DIGITAL RECORDING

38

1          MR. WILLIAM LIVOLSI, JR.:  No.

2          THE COURT:  I want to make sure you both understand

3     as well that by pleading guilty you waive important

4     constitutional rights.  Now, these are discussed in the

5     Plea Agreement.  First, you waive your right to a trial by

6     jury, set October 21st, at which you would be presumed innocent

7     and at which you would be represented by your attorneys.

8          Do you understand?

9          MS. LINDA LIVOLSI:  Yes.

10          MR. WILLIAM LIVOLSI, JR.:  Yes, sir.

11          THE COURT:  You're waiving your right at such a trial

12     to cross-examine any witnesses brought into court to testify

13     against you as well as your right to bring witnesses into court

14     to testify on your own behalf at that trial.

15          Do you both understand that?

16          MS. LINDA LIVOLSI:  Yes.

17          MR. WILLIAM LIVOLSI, JR.:  Yes.

18          THE COURT:  Finally, by pleading guilty you waive

19     your right to remain silent regarding the charges you're

20     pleading guilty to and you agree to tell me here in open court

21     what you did but that -- but that otherwise you've admitted in

22     the factual statements in the Plea Agreement.

23          Do you both understand that?

24          MS. LINDA LIVOLSI:  Yes.

25          MR. WILLIAM LIVOLSI, JR.:  Yes.

TRANSCRIBED FROM DIGITAL RECORDING

39

1          THE COURT:  Now, I believe I already asked you,

2    Ms. Kirtley, and you, Mr. Damm, but I take it you do agree with

3    the statement of essential elements for the respective counts

4    of the Indictment; is that correct?

5          MS. KIRTLEY:  That's correct, Your Honor.

6          THE COURT:  And the defendants both acknowledge those

7    elements.

8          You will note that there's reference to the

9    United States Sentencing Guidelines which are employed to try

10   and establish an appropriate range of sentence.  Those

11   guidelines are advisory, but they are useful and I will consult

12   them in determining what the appropriate sentence will be in

13   your case but they're not binding on the Court.

14         Do you both understand that?

15         MS. LINDA LIVOLSI:  Yes.

16         MR. WILLIAM LIVOLSI, JR.:  Yes.

17         THE COURT:  Something which is binding is the

18   statutory maximum which was outlined at 20 years maximum prison

19   sentence as to Count Two as to either of you and an additional

20   potential 3 years, Ms. Livolsi, as to you on the tax count,

21   Count Four.  In the case of fine, it is up to $250,000 on

22   Count Two, $100,000 on Count Four; and the supervised release

23   term of 3 years.

24         You both understand those are the maximum penalties

25   that could be -- I'm not suggesting those are the penalties,

TRANSCRIBED FROM DIGITAL RECORDING

40

1    but those are the maximum penalties that could be imposed.  You

2    both understand that?

3            MR. WILLIAM LIVOLSI, JR.:  Yes.

4            MS. LINDA LIVOLSI:  Yes.

5            THE COURT:  The factual statement that is recited in

6    the -- in both Plea Agreements, which are very similar factual

7    statements, you've already indicated that you concur in those,

8    that they're accurate statements.  Just summarize for me,

9    briefly, Ms. Livolsi, in your own words, the essence of the

10   scheme to defraud in which you were engaged.  I draw from the

11   factual statement that it involved accepting from investors

12   investments of money which were to be in -- placed in

13   investment by you but instead the funds were converted to your

14   own personal use.

15           Is that accurate?

16           MS. LINDA LIVOLSI:  Yes.

17           THE COURT:  And did you know at the time that you

18   were receiving those funds that they were being given to you

19   based upon false promises or representations that you had made

20   to the investors to give you the money?

21           MS. LINDA LIVOLSI:  Yes.

22           THE COURT:  All right.

23           And, Mr. Livolsi, same questions for you, were you

24   engaged in that same scheme?

25           MR. WILLIAM LIVOLSI, JR.:  Yes, I was.

TRANSCRIBED FROM DIGITAL RECORDING

41

1            THE COURT:  And, same types -- not was the same

2   statements, but similar type statements that you made to induce

3   others to part with money?

4            MR. HUNTERTON:  Your Honor -- Your Honor, if I might,

5   I'm sorry for the interruption, but the -- the Plea Agreement

6   has very clear delineations about what Mr. Livolsi was involved

7   in --

8            THE COURT:  Right.

9            MR. HUNTERTON:  -- and what he wasn't.

10           THE COURT:  Yeah.

11           MR. HUNTERTON:  And he was not involved in the

12  solicitation or representation to the investors.

13           THE COURT:  You're right.  You're right.

14           The Plea Agreement factual recitations does not say

15  that.

16           Go ahead, Mr. Livolsi, tell me what your role was

17  then in the -- in the scheme.  What -- what did you do to help

18  carry the scheme out if you weren't the person out there making

19  false representations?

20           MR. WILLIAM LIVOLSI, JR.:  Umm, I was responsible for

21  moving cash and funds into bank accounts.

22           THE COURT:  Okay.

23           MR. WILLIAM LIVOLSI, JR.:  And, helping to pay off

24  prior investors.

25           THE COURT:  And did you understand that the monies

HEATHER K. NEWMAN - (702) 464-5828

TRANSCRIBED FROM DIGITAL RECORDING

42

1    that you were moving and opening of these accounts were monies

2    that were derived from false representations by others,

3    including Ms. Livolsi, to investors?

4            MR. WILLIAM LIVOLSI, JR.:  One -- may I speak with my

5    attorney --

6            THE COURT:  Yeah.

7            MR. WILLIAM LIVOLSI, JR.:  -- for a second, please?

8            (Discussion between Mr. William Livolsi, Jr. and

9            counsel.)

10           MR. WILLIAM LIVOLSI, JR.:  I understand that now,

11   Your Honor, given the facts.

12           THE COURT:  At the time you were engaged in the

13   conduct did you understand that the monies were a product of

14   fraud, false representations of some kind?

15           MR. WILLIAM LIVOLSI, JR.:  I didn't understand that

16   at the time but I do understand it now and that I recognize

17   that that was inappropriate and it was wrong.

18           THE COURT:  All right.  Mr. Damm, would that be

19   sufficient under the -- you prepared the factual statement.  Is

20   that consistent with the factual statement?

21           MR. DAMM:  It is not, Your Honor.

22           In order for there to be a factual basis for

23   Mr. Livolsi, he would have needed to understand, at the time he

24   engaged in this conduct, that it was illegal.  It's really kind

25   of irrelevant whether or not he understands it now, it's --

HEATHER K. NEWMAN - (702) 464-5828

TRANSCRIBED FROM DIGITAL RECORDING

43

1          THE COURT:  Right.

2          MR. DAMM:  -- it's what did he understand at the time

3    that he engaged in the conduct.

4          THE COURT:  Well, I agree.  There's nothing else

5    about the case then that comes into play here, that's -- that's

6    the up or down -- well, what about that, Mr. Hunterton, if he

7    doesn't know at the time that the allegedly illegal conduct is

8    occurring that it's part of a scheme to defraud or in

9    furtherance of a scheme to defraud --

10         MR. HUNTERTON:  I think his statement's sufficient,

11   Your Honor.  There's nothing in the Plea Agreement, written

12   Plea Agreement, that says he knew and, I thought Mr. Damm did a

13   very good job crafting that.  However, it does say, at Page 4,

14   Line 20 and at other places, that he opened a bank account in

15   his name with Mrs. Livolsi; he, as he has already said here in

16   open court, moved the money and used it to pay prior investors

17   and I believe that is sufficient, certainly under the principle

18   of the 18, U.S., Section 2 to support the guilty plea, but,

19   Mr. Livolsi's trying to be honest here with the Court about

20   what he knew at the time which was different than what he

21   understands now that myself and Bert Goodrich have been able to

22   go through the evidence and demonstrate what was actually going

23   on.

24         THE COURT:  Well, no, I understand what he knows now

25   is -- is what's set out in -- essentially in the Plea Agreement

TRANSCRIBED FROM DIGITAL RECORDING

44

1    and that the funds were the product of false pretenses and

2    fraud, at least by Mrs. Livolsi, but there is the requirement

3    that defendant acts with the intent to defraud, that is, the

4    intent to deceive or cheat, and aiding and abetting -- I don't

5    know if I've got my . . .

6              I mean, if your client thought everything he was

7    doing was perfectly legal and had no clue that he was involved

8    in -- participated in anything illegal . . .

9              Under 18, U.S. Code, Section 2, the Government would

10   have to prove, to secure a conviction on the Wire Fraud under

11   aiding and abetting, first, the underlying wire fraud was

12   committed by someone -- that's really not in dispute,

13   Ms. Livolsi did that -- second, the defendant knowingly and

14   intentionally aided, counseled, commanded, induced, or procured

15   that person to commit each element of the crime; and third, the

16   defendant acted before the crime was completed.  It's not

17   enough that defendant merely associated with the person

18   committing the crime or unknowingly or unintentionally did

19   things that were helpful, or was present at the scene of the

20   crime.  The evidence must show the defendant acted with the

21   knowledge and intention of helping that person commit the

22   crime.

23             The way I understand that, it requires that

24   Mr. Livolsi, even though he's not the percipient or he's not

25   the firsthand actor when he's engaged at some point in these

1    transfer of monies, these payment of individuals, that he

2    understands he is being of assistance to Ms. Livolsi in her

3    carrying out the scheme to defraud, which she apparently

4    devised and in which she was engaged.  So that's really the nub

5    of the matter.  And, do I understand you had absolutely no

6    clue, you did not understand that?  You did not have knowledge

7    of that and you were -- were, in essence, acting innocently the

8    entire time?

9           Mr. Damm.

10          MR. DAMM:  Your Honor, I think if we maybe focus on

11   Page 7 of Mr. Livolsi's Plea Agreement, maybe we can put a

12   little finer point on this issue.  At Line 14 it indicates that

13   on February 15th, 2007, William Livolsi was present during the

14   testimony of Linda Livolsi during a hearing related to a

15   lawsuit filed against her by one of the investors in which the

16   judgment obtained against Linda Livolsi on behalf of another

17   investor was mentioned.  The Government's intention -- the

18   Government's belief is that Mr. Livolsi, at least by that point

19   in time, if not much, much earlier, knew that his wife was

20   engaged in fraudulent conduct by soliciting money from

21   investors and not investing that money, to the extent that she

22   was actually sued in state court here in Las Vegas, in

23   Clark County.

24          THE COURT:  Yeah.

25          MR. DAMM:  And after that, Mr. Livolsi opened up a

TRANSCRIBED FROM DIGITAL RECORDING

46

1    bank account on May 3rd, 2007, with the Bank of Oklahoma.  On

2    November 9th he and the defendant jointly opened a bank account

3    with Wachovia Bank under the name of RGM Enterprises, LLC.

4    Now, this is the fraudulent entity that Mrs. Livolsi used to

5    induce investors to part with their money.  So, here we have

6    the active participation in November of 2007 of Mr. Livolsi and

7    his wife opening a bank account in the name of this entity.

8    Less than a month later, Mrs. Livolsi was able to fraudulently

9    induce another investor to part with over 5 million dollars by

10   claiming that she would invest that money into a hedge fund.

11   Two days after that, and this is at Page 8 of the facts,

12   Mr. Livolsi received a wire transfer in the amount of 3.5

13   million dollars and he immediately wired funds to individuals

14   previously defrauded by Ms. Livolsi and for which they had to

15   pay judgments.

16              THE COURT:  Yeah.

17              MR. DAMM:  So, he was the conduit for taking money

18   from the last investor, the 5 million dollar fraud --

19              THE COURT:  Yeah, I understand the circumstances and

20   it's laid out in the --

21              MR. DAMM:  And I -- I guess I'm a little mystified by

22   his claim now that he didn't know that any of that conduct --

23              THE COURT:  That's -- that's the bottom line

24   question.

25              MR. DAMM:  -- was illegal.

TRANSCRIBED FROM DIGITAL RECORDING

47

1          THE COURT:  Mr. Livolsi, throughout all that's just

2   been recited, all these events, are you saying that you did not

3   know at some point during the ongoing scheme -- I'm not talking

4   about being at the origination of it or participating in false

5   representations, but that what you had been doing and what you

6   then were doing was knowingly done to assist in the carrying

7   out of the fraudulent scheme?

8          MR. WILLIAM LIVOLSI, JR.:  I assisted.

9          THE COURT:  You did?

10          MR. WILLIAM LIVOLSI, JR.:  I did.

11          THE COURT:  All right.  You understood that.

12          MR. WILLIAM LIVOLSI, JR.:  Yes, I understand that.

13          THE COURT:  All right.

14          All right.  The Court will receive the pleas of both

15   defendants and will set the matter for sentencing for . . .

16   I've lost the sheet so you'll have to remind me, Miss Clerk.  I

17   think it -- oh, February 18th at -- 2015, at 9:00 a.m. for both

18   defendants, we'll set them at the same time, 9 o'clock a.m.,

19   and take them one after the other.

20          The matter will be referred to the Probation

21   Department to prepare a Pre-Sentence Report.

22          The trial date will be vacated.

23          The pending motions will all be denied as moot in

24   light of the pleas that have been entered, Miss Clerk, and the

25   Order Certifying Facts in order to show cause, Document 173,

TRANSCRIBED FROM DIGITAL RECORDING

48

1    that hearing will also be vacated, again, as mooted and there

2    will be no further proceedings on the Order to Show Cause.

3              I think that cleans up everything on the docket.

4              Both defendants will continue on the condition --

5    conditions previously set by the Court with the assistance of

6    the Department of Pretrial Services.

7              Is there anything else on behalf of any of the

8    parties at this point then?

9              MR. DAMM:  Your Honor, on behalf of the

10   United States, nothing further.  I'd just like to thank defense

11   counsel and the defendants for resolving what has been --

12             THE COURT:  It's been a difficult, hard fought case

13   for a long time, and a lot of illness along the way.

14             And Ms. Kirtley, anything further, or Mr. Hunterton?

15             MS. KIRTLEY:  No, Your Honor, thank you.

16             MR. HUNTERTON:  No.  Thanks, Judge.

17             THE COURT:  All right.  Thank you all then.

18   Obviously you'll need to make arrangements with the Department

19   of Probation for the Pre-Sentence Investigation.

20             MS. KIRTLEY:  Yes, Your Honor.

21             THE COURT:  All right.  Thank you.

22             COURTROOM ADMINISTRATOR:  All rise.

23             Court's adjourned.

24             (Proceedings adjourned at 11:29:41 a.m.)

25

TRANSCRIBED FROM DIGITAL RECORDING

1                              * * *

2    I, Heather K. Newman, court-approved transcriber, certify that

3    the foregoing is a correct transcript transcribed from the

4    official electronic sound recording of the proceedings in the

5    above-entitled matter.

6

7

8          /s/ Heather K. Newman          3-30-2015
           Heather K. Newman              Date
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25